211 So.2d 290

STATE of Louisiana

v.

Clarence WASHINGTON.

No. 49000.

June 4, 1968.

Charles A. Byrne, New Orleans, for appellant.

1. The court further ordered the jail sentence suspended upon payment of the fine, and defendant placed under the supervision of the Department of Institutions, Probation and Parole Division,

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.

GLADNEY, Justice ad Hoc.

Defendant appeals from his conviction of the crime of gambling, a misdemeanor (LSA–R.S. 14:90), and sentence to pay a fine of $500.00 and to serve a term of one year in the Parish Prison and six months additional in default of payment of fine.[1]

Seven bills of exceptions are presented for our determination and disposition.

### BILL OF EXCEPTIONS NO. 1.

Bill of Exceptions No. 1 was reserved to the trial court's overruling defendant's objection to certain testimony given by Officer Warren Woodfork on the hearing of the motion to suppress.

Prior to trial, defendant filed a motion to suppress evidence, lottery paraphernalia. He alleged that the evidence was seized in violation of his constitutional rights and guarantees against unlawful searches and seizures in that there was no warrant of search and seizure.

Trial commenced on November 4, 1966. Counsel for the defendant stated to the court that there was a motion to suppress

for a period of two years. The court further ordered the accused discharged upon his bond to await further proceedings.

in the record, and that he was ready on that. The State replied that it was its understanding that the motion would be referred to the merits. Defense counsel then replied that it was immaterial, and hearing on the motion followed. Officer Woodfork testified as follows:

"As I said, I was effecting an arrest at So. Saratoga and Thalia Streets. I had the police car parked on Thalia Street facing the river there at the corner of Saratoga. I was effecting a pinball machine arrest. My partner was inside the barroom. I went out to the car to summon the motor maintenance truck to take off the pinball machine that was confiscated in the arrest. I was seated in the car and using the police radio. I had to wait a few minutes until the motor maintenance division informed me whether they had a truck available or not. So, I was seated in the car for approximately five or ten minutes. I could see down along Saratoga Street. I observed that in the 1400 block of Saratoga Street the defendant before the bar, I saw him. I saw him go into one residence. He went in and stayed a couple of minutes and came out and went into another and stayed a couple of minutes and he came out of there. I saw him the second time, place into his right pocket what appeared to me to be a long sheaf of white paper. I recognized the defendant having had occasion to arrest him numerous times in the past for lottery violations."

Bill of Exceptions No. 1 was reserved immediately after the foregoing testimony was given. Counsel for defendant contends that the admission of the testimony violated defendant's rights in that the testimony referred to arrests made by a police officer, and that in the absence of a reference to convictions the testimony was calculated only to prejudice the defendant's presumption of innocence. In brief, counsel argues:

"If the purpose of permitting the police officer to testify was to establish that his recognition of the accused evolved from the previous arrests which he had made of the accused, again we plead its inadmissibility. Unless the officer can testify at that time that he knew that the man had been *convicted as the result of these arrests,* previous arrests—no matter how many in number—without convictions following upon those arrests cannot form the basis of a 'probable cause' for suspecting that the defendant at bar is or may be in the act of committing a criminal offense in the presence of the officer, and should under no circumstances form the basis for a valid arrest."

In his Per Curiam to Bill of Exceptions No. 1, the trial judge states that it was agreed in open court between counsel for defendant and the District Attorney that

the *motion to suppress* would be tried simultaneously with the trial of the case on its merits, in order not to duplicate the effort. His per curiam recites in part:

"Since the police officer had no search warrant, the constitutional validity of the search in this case depended upon the constitutional validity of the defendant's arrest. Whether that arrest was constitutionally valid depended in turn upon whether, at the moment when the arrest was made, the officer had probable cause to make it—whether at that moment the facts and circumstances within his knowledge were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

"The police officer was in the process of describing how well he knew the defendant and how well he knew of the defendant's illegal occupation, when he stated that he 'recognized the defendant having had occasion to arrest him numerous times in the past for lottery violations.' * * *

"* * *

"In the instant case, Clarence Washington was not tried by a jury, but by the judge alone, and the court considered the police officer's statement of Washington's prior arrests and occupation in conjunction with his Motion to Suppress only, and not in conjunction with his guilt or innocence. While a jury may not be competent to make this distinction, certainly a judge can."

It is to be noted that the motion to suppress was being heard by the trial judge. This is a misdemeanor case and was not tried by a jury. "Every misdemeanor shall be triable by the judge without the intervention of a jury." LSA–R.S. 15:340, (now Art. 779 of the new Code of Criminal Procedure).

▮▮▮▮ The trial judge was competent to distinguish between evidence attributable to the motion to suppress and that which would be considered in connection with defendant's guilt or innocence. It was incumbent upon him to rule as to the legality of defendant's arrest; it was mandatory that he determine whether there was probable cause for his arrest.[2] If the arrest were illegal, then the evidence secured through the search and seizure would likewise be illegal.[3] Officer Woodfork had

2. See, State v. Johnson, 249 La. 950, 192 So.2d 135; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; Wells v. Gaspard, La.App., 129 So.2d 245 (1961).

3. "* * * Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. * * * This right to search and seize without a search warrant extends to things under the accused's immediate control, Carroll v. United States, supra, 267 U.S., at 158,

neither a warrant of arrest nor a warrant of search and seizure at the time of his contested actions. The trial judge had to know why Officer Woodfork made the arrest; Officer Woodfork testified with respect to his reasons and stated that he had arrested the defendant in the past for lottery violations.

"When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed. Carroll v. United States, 267 U.S. 132, 162, 45 S. Ct. 280, 288, 69 L.Ed. 543. If the court is not informed of the facts upon which the arresting officers acted, it cannot properly discharge that function. * * " Beck v. State of Ohio, 379 U.S. 89, 85 S. Ct. 223, 228, 13 L.Ed.2d 142. LSA–R.S. 15:495 (now LSA–R.S. 15:495) provided:

"Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeach-

ing the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein." See, 19 La.L. Rev. 684.

" * * * The rule relied upon is recognized by statute and the jurisprudence. It is, essentially, a rule of evidence. La.C.Cr.P. arts. 445, 446, 495 (1928); * * * " State v. Gerald, 250 La. 759, 199 So.2d 536.

Article 703 of the new Code of Criminal Procedure provides for the motion to suppress evidence. The former code had no equivalent. In State v. Davidson, 248 La. 161, 177 So.2d 273, we said:

"Prior to the decision in Mapp v. Ohio (1961), 367 U.S. 643, 81 S.Ct. 1684,

---

45 S.Ct. at 287, 69 L.Ed. 543, and, to an extent depending on the circumstances of the case, to the place where he is arrested, Agnello v. United States, supra, 269 U.S. [20] at 30, 46 S.Ct. [4] at 5, 70 L.Ed. 145; * * * The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the de-

struction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. * * * " Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. Cf. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684.

6 L.Ed.2d 1081, 84 A.L.R.2d 933, conflicting rules prevailed in various jurisdictions as to whether the admissibility of evidence in a criminal case was affected by the fact that such evidence was obtained by means of an illegal search and seizure. In a majority of the State courts, and in accordance with the common law rule, the view prevailed that, in the absence of a statute abrogating or modifying the rule, evidence in a criminal case was not rendered inadmissible against the accused by reason of the fact that it was obtained by means of an unlawful search and seizure.

"This was the rule in Louisiana. * * Since an objection to evidence on the ground that property had been unlawfully seized was unavailing under our jurisprudence, no provision was made in our Code of Criminal Procedure in 1928 for the necessity of a motion to suppress evidence or to quash a search warrant in cases involving alleged illegality as a result of an unreasonable search and seizure.

" * * *

"In Jones v. United States (1960), 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the Supreme Court recognized that the provision above quoted of Rule 41(e) [18 U.S.C.A. Federal Rules of Criminal Procedure] ' * * * is a crystallization of decisions of this Court requiring that procedure, and is designed to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt. * * *' * * * "

■ We conclude that the strict rules of evidence with respect to evidence of former arrests as set forth supra in LSA–R.S. 15:495 do not apply to trials of the motion to suppress. The arresting officer testifying on the motion to suppress is in a different position than a witness testifying on trial. He testifies as to police conduct; he has to explain certain mental deliberations as well as knowledge within his professional ambit. He has to offer proof as to whether a contested arrest was legal. He has to offer proof as to whether an incidental search and seizure following arrest was legal or not. He is in a tenuous position. He has to prove probable or reasonable justifiable cause for his actions. State v. Brown, 250 La. 1125, 202 So.2d 274; State v. Johnson, 249 La. 950, 192 So. 2d 135; State v. Pebworth, La., 208 So.2d 530. Cf. Preston v. United States, 376 U.S. 364, 34 S.Ct. 881, 11 L.Ed.2d 777; Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed. 2d 684; Rodgers v. United States, 8 Cir., 362 F.2d 358; Alexander v. United States, 9 Cir., 362 F.2d 379; United States v. LaMacchio, 3 Cir., 362 F.2d 383.

We find nothing in our jurisprudence nor in the decisions of the United States Su-

preme Court which imposes on evidence adduced upon the trial of a motion to suppress the same strict standards as imposed on evidence adduced on trial of a criminal prosecution. The United States Supreme Court pertinently stated in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879:

> "Apart from its failure to take account of the facts disclosed by Malsed's direct and personal observation, even if his testimony concerning the prior arrest were excluded, the so-called distinction places a wholly unwarranted emphasis upon the criterion of admissibility in evidence, to prove the accused's guilt, of the facts relied upon to show probable cause. That emphasis, we think, goes much too far in confusing and disregarding the difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search. It approaches requiring (if it does not in practical effect require) proof sufficient to establish guilt in order to substantiate the existence of probable cause. There is a large difference between the two things to be proved, as well as between the tribunals which determine them, and therefore a like difference in the *quanta* and modes of proof required to establish them."

━━━━

4. "The following persons are and shall be guilty of vagrancy:
   " * * *

We do not find that the defendant's constitutional rights were violated by Officer Woodfork's testimony supra, nor do we find that the defendant suffered any prejudice by the admission of Officer Woodfork's testimony concerning his previous arrest of the defendant.

Bill of Exceptions No. 1 is without merit.

## BILLS OF EXCEPTIONS NOS. 2, 3 AND 4.

Bill of Exceptions No. 2 was reserved to the trial court's overruling of the motion to suppress.

Bill of Exceptions No. 3 was reserved when the trial judge overruled defense counsel's objection to the introduction into evidence of S–4, a spelling tablet seized from defendant when he was searched following the arrest.

Bill of Exceptions No. 4 was reserved when the trial judge overruled defense counsel's objection to the introduction into evidence of S–2, a brown envelope containing either $3.75 or $3.95 and a pad of paper seized from defendant when he was searched following the arrest.

Officer Woodfork testified that he arrested the defendant and charged him with a violation of LSA–R.S. 14:107(4) relative to persons who maintain themselves for the most part by gambling.[4] He said:

"(4) Habitual gamblers or persons who for the most part maintain themselves by gambling;"

"Ironically, I had also arrested him in this particular location where he was located at this time, Thalia and Saratoga Streets. I have arrested numerous lottery vendors in the past. So, I stopped the defendant and questioned him as to his activities, being in the immediate area, particularly since I saw him place this long sheaf of white paper in his pocket. I asked him what he was doing in the neighborhood and he said he was visiting friends. I asked him what the friends' names were and he said he didn't remember. I also asked Mr. Washington, the defendant before the bar, if he was gainfully employed and he said that he was receiving the old age pension. I asked him did he have any papers or anything to show same. He showed me a piece of paper that was not discernable to me. It was matted and torn. I couldn't make anything out of it. As I said, I saw him place this paper in his pocket. Along the side of his pocket, his pockets were very—were covered with blue stains which I recognized to be the ink that comes off carbon paper. Since the subject could not give me any good reason for being in the neighborhood and he had been arrested in this neighborhood previously for lottery violations—"

Officer Woodfork testified that after he placed the defendant under arrest he brought him inside a barroom where another arrest was being effected. He said that he wanted to search the defendant before he conveyed him to the station. It was Officer Woodfork's opinion that the search was routine after arrest. The search produced the evidence objected to in Bills of Exceptions Nos. 3 and 4.

Defense counsel contends that if officers of the law are permitted to make arrests such as was effected in the case of the defendant, constitutional liberties are in fearful jeopardy.

A reading of Officer Woodfork's testimony and a study of the jurisprudence cited and quoted in our discussion of Bill of Exceptions No. 1 constrains us to conclude that Officer Woodfork had reasonable cause to believe that the defendant was conducting a lottery business—a violation of the law. We find that the arrest was legal and valid, and that Officer Woodfork's action in making such did not violate the defendant's constitutional rights. LSA–R.S. 15:60 (now Art. 213 of the new Code of Criminal Procedure).

Defendant further contends that since the District Attorney refused to accept charges under LSA–R.S. 14:107(4) and

charged him by bill of information with a violation of LSA–R.S. 14:90,[5] the evidence seized from his person following his arrest was illegal and inadmissible in evidence in the prosecution.

■ LSA–R.S. 14:90, which provides for a fine of not more than $500.00 or imprisonment for not more than one year, or both, and LSA–R.S. 14:107(4), which provides for a fine of not more than $200.00 or imprisonment for not more than nine months, or both, are related proscriptions. There is no law which compelled the District Attorney to charge the defendant under LSA–R.S. 14:107(4); he was not bound by the arresting officer's charge. He exercised a right of policy which he possessed in filing the present information which charged a violation of LSA–R.S. 14:90.

Officer Woodfork qualified as an expert in the field of lottery. He identified S–2 and S–4 as lottery paraphernalia. He also identified them as items taken from the person of the defendant following his arrest.

■ We conclude that the trial judge was correct in overruling the motion to suppress. We further conclude that he was correct in allowing S–2 and S–4 in evidence.

5. "Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery,

Bills of Exceptions Nos. 2, 3 and 4 are without merit.

### BILLS OF EXCEPTIONS NOS. 5 AND 6.

Bill of Exceptions No. 5 was reserved to the trial court's overruling defendant's motion for a new trial.

Bill of Exceptions No. 6 was reserved to the trial court's overruling defendant's motion in arrest of judgment.

The motion for a new trial and the motion in arrest of judgment presented for the trial court's consideration matters which had been raised previously during trial. There was nothing new for his consideration. We do not find that he abused his discretion in overruling the motions.

Bills of Exceptions Nos. 5 and 6 are without merit.

### BILL OF EXCEPTIONS NO. 7.

Bill of Exceptions No. 7 was reserved when the trial court amended the sentence imposed upon the defendant by increasing the fine from $100.00 to $500.00.

On February 2, 1967, the trial judge found the defendant guilty as charged. Sentence was deferred, and the accused was discharged upon his bond to await sentence. On February 24, 1967, the trial court overruled the motion for a new trial

or contrivance whereby a person risks the loss of anything of value in order to realize a profit."

and the motion in arrest of judgment, supra, Bills of Exceptions Nos. 5 and 6. Counsel for the defendant waived all delays, and the trial court sentenced the defendant to pay a fine of $100.00 and to serve a term of one year in the Parish Prison, and six months additional in default of payment of the fine. The jail sentence was ordered suspended upon payment of the fine. Counsel for the defendant informed the court of the defendant's intention to appeal. Motion for appeal was to be filed on March 7, 1967; appeal bond was set at $1,500.00.

On March 7, 1967, the State filed a motion to amend sentence, which alleged in part:

"The defendant has had prior convictions and numerous arrests for violations of R.S. 14:90 which record indicates that the defendant is not entitled to the suspended sentence which he received on February 24, 1967.

"The execution of the defendant's sentence has not as yet begun nor has the defendant's motion for appeal been signed by the court; therefore, the Court is entitled in accordance with the provisions of Article 881 of the Louisiana Code of Criminal Procedure [6] to amend the defendant's sentence within the legal limits of its discretion."

On the same day, March 7, 1967, defense counsel filed a motion for appeal, and the matter was continued. The following day, March 8, 1967, defense counsel objected to the amendment of sentence; the trial court then amended the sentence, supra, by increasing the fine imposed from $100.00 to $500.00.

On March 10, 1967, defense counsel again filed a motion for appeal. The accused was ordered discharged upon his bond to await further proceedings. On October 16, 1967, the trial court signed an order granting the defendant a suspensive appeal. The trial judge also signed Bill of Exceptions No. 7 on October 16, 1967 and rendered his per curiam to the bill which recites in part:

"Under C.Cr.P. Art. 881, the Court had authority to amend the sentence prior to the beginning of execution of the sentence.

"Counsel for defendant, in a pre-sentence discussion in Chambers, requested a suspended jail sentence for the defendant, because of an illness. The Court agreed to give the defendant the maximum fine and jail sentence, and to suspend the jail sentence only, and place the defendant on probation for two years.

6. "Although the sentence imposed is legal in every respect, the court may amend or change the sentence, within the legal

limits of its discretion, prior to the beginning of execution of the sentence."

"In pronouncing sentence, the Court incorrectly stated the fine to be $100.00 instead of $500.00. In amending the sentence, this was the only change made by the Court.

"This bill is without merit."

Defense counsel contends that a reading together of the various articles of the new Code of Criminal Procedure shows that when the trial court set the amount of the appeal bond on February 24, 1967, it thereby divested itself of jurisdiction of the defendant, and that any attempt thereafter to increase his sentence was without the purview of that court.

Article 916 of the Code of Criminal Procedure provides in part:

"The jurisdiction of the trial court is divested and that of the appellate court attaches, upon the entering of the order of appeal. Thereafter, the trial court has no jurisdiction over the matter * * *"

As stated supra, defendant's sentence was amended on March 8, 1967. It was not until October 16, 1967 that the trial judge signed the order of appeal and set the return date as of December 14, 1967, such being conditioned upon furnishing bond in the amount of $1,500.00.

We find that under Articles 881 and 916 of the Code of Criminal Procedure, supra, the trial judge had the right to amend defendant's sentence. His per curiam, supra,

discloses that he did not abuse his discretion. Defendant does not show herein that he suffered any prejudice by the amendment.

Bill of Exceptions No. 7 is without merit.

For the reasons assigned, the conviction and sentence are affirmed.