HAMLIN, Justice:
 

 Defendant appeals from his conviction of the crime of simple burglary, LSA-R.S. 14:62, and his sentence to serve nine years in the Louisiana State Penitentiary.
 

 Presented for our consideration are three Specification of Errors which incorporate seven bills of exceptions reserved by the defendant during the court of the proceedings.
 
 [1]
 
 Rather than treat the Specification of Errors as such, we shall determine the correctness vel non of the bills of exceptions.
 

 The facts of record disclose that on January 22, 1970, Timberland Saw Company, Alexandria, Louisiana, was burglarized of two 205 Model 18055 lawn mowers.
 

 On January 21, 1970, Sgt. Charles D. Ezernack of the Alexandria Police Force had been detailed to observe the actions of the defendant. He kept him under strict surveillance, and after trailing him for several hours during the evening of the following day, Sgt. Ezernack parked his patrol car in a dark area near the saw
 
 *689
 
 company. From the location, he allegedly saw a parked 1956 Oldsmobile used by defendant, observed defendant in the saw company building, watched him place boxes in the parked car, and viewed his leaving the scene of the crime. On the hearing of the Motion to Suppress, Sgt. Ezernack testified as follows:
 

 “Q. Did you see David McQueen again that night?
 

 “Ai Yes I did.
 

 “Q. Where did you see him ?
 

 “A. Saw him in the building.
 

 “Q. What part of the building ?
 

 “A. He walked from the Twelfth Street side of the building which would be my left facing the building across the street from Twelfth, walked over to the right of the building and picked up a big box, walked back over toward the Twelfth Street exit.
 

 “Q.
 
 Did you see what he did with that box?
 

 “A. Yes, sir, he placed them in the right rear of this ’56 Oldsmobile.
 

 “Q. How well lighted was the Timberland Saw Company?
 

 “A. It was lit up, you could see anybody walking around in the place- — -had real bright lights in the place, it was lit up.
 

 “Q. Could you see the party that you saw carrying the box in Timberland Saw building?
 

 “A.
 
 I sure did.
 

 “Q. Did you know this party ?
 

 ■
 
 “A.
 
 Sure do.
 

 “Q. Who was this party ?
 

 “A.
 
 It’s David McQueen.”.
 

 Immediately after defendant drove away, Sgt. Ezernack radioed the description of the Oldsmobile, its license number, and the name of the driver, to all available police cars; he told all cars to pursue the subject, stop him, apprehend him, and charge him with the burglary of the saw company building. When asked exactly what he put on radio, Sgt. Ezernack said, “Put out the description of a 1956 Oldsmobile, light green in color with dirty yellow or light top¡ bearing 69 La. tags 20E8538, being driven by one white male, David McQueen.”
 

 Shortly after receiving Sgt. Ezernack’s message, Officer Samuel J. Mayeaux, Jr. spotted the car defendant was driving and gave chase. Defendant wrecked the car by running into a telephone pole; he was thrown from the car, and his foot was pinned underneath it. When asked on the hearing of the Motion to Suppress as to why he had observed the car being driven by defendant, Mayeaux said, “Sgt. Ezérnacl-c stated that this car was occupied by David McQueen who had just broke into someone’s (inaudible).”
 

 
 *691
 
 A number of police officers arrived at the scene of the accident and aided by bystanders freed defendant from the car and placed him under police restraint. Detective Philip Oestricher rode in an ambulance with him to the hospital where, at approximately 8:20 P.M., he placed him under formal arrest, charging him with simple burglary. Detective Oestricher said that at the time of the formal arrest, he advised defendant of his rights according to law. When asked on the hearing of the Motion to Suppress why he had gone to the scene of the automobile accident, Detective Oestricher said, “We had been advised by Sgt. Ezernack over the police radio that he saw David McQueen in the saw company.”
 

 On the hearing of the Motion to Suppress, Ernie K. Johnson, an Alexandria City Policeman also at the scene of the accident, g'ave as his reason for being there the fact that he heard Sgt. Ezernack say “that he had saw David McQueen in the building, that he was leaving in a ’56 Oldsmobile, bearing Louisiana license number 28538. He had some large boxes in the car.”
 

 Officer Mayeaux, the first officer at the scene of the accident, observed two large boxes in the back of defendant’s car. He testified that he and Sgt. Ezernack, who also went to the scene of the accident after observing the burglary, removed the boxes from the car. He further testified.:
 

 “A. We placed them in Unit Fourteen in the trunk. We proceeded to the police station, I was in my cruiser car fourteen. Sgt. Ezernack followed me to the police station. When we got there he took a box and I took a box, we brought them up to the detective department.
 

 “Q. Approximately after this wreck occurred did you remove those boxes from the automobile?
 

 “A. As soon as he left in the ambulance.
 

 “Q. Did you observe the boxes in the rear seat of the car when you first came upon the accident ?
 

 “A. Yes, sir.
 

 “Q.
 
 Were the boxes in the same place when you removed them from the car?
 

 “A. Yes, sir.”
 

 Sgt. Ezernack testified that in removing the boxes (these boxes contained lawn mowers which were identified by the victim of the burglary as belonging to him) from defendant’s car, he acted pursuant to Detective Oestricher’s orders given before Detective Oestricher accompanied defendant to the hospital.
 

 BILLS OF EXCEPTIONS NOS. 1 AND 2
 

 Bill of Exceptions No. 1 was reserved on the hearing of the Motion to Suppress when the trial judge overruled
 
 *693
 
 defense counsel’s objection to a question propounded to Officer Ernie K. Johnson as to whether he had any reason to observe the Oldsmobile driven by defendant on the night of the alleged burglary. The witness replied, as stated supra, that he had received Sgt. Ezernack’s message that he had seen David McQueen committing the instant burglary.
 

 Bill of Exceptions No. 2 was reserved on the hearing of the Motion to Suppress when the trial judge overruled defense counsel’s objection to the following question propounded to Detective Philip Oestricher: “What was your reason for going to this automobile accident at 16th and Washington?”
 

 Supra, we have detailed the testimony given by the police officers involved in Bills of Exceptions Nos. 1 and 2 — Sgt. Ezernack radioed to them that the defendant had committed the instant offense. Counsel for the defendant contend that the testimony was “pure hearsay and should never have been admitted into evidence, either at the motion to suppress or at trial.” They argue that the cumulative effect of the alleged hearsay evidence not only showed probable cause for an arrest, but was so strong that it was probably sufficient alone to convict the defendant of the crime. They further argue:
 

 “But to have these officers state that David McQueen, the defendant, was in the building, and that he was taking boxes out of the building, and that he was leaving in a car was unnecessary and prejudicial. The státements made by these officers prove a crime was committed, that David McQueen was the offender, and that he was trying to get away. These statements surely go far beyond the necessary realm of any effort to show ‘probable cause’, or the reasons for police conduct.”
 

 Initially, we are considering evidence adduced at the hearing of the Motion to Suppress; such hearing is not one of restriction — it is determinative of probable cause.
 

 “The trial judge was competent to distinguish between evidence attributable to the motion to suppress and that which would be considered in connection with defendant’s guilt or innocence. It was incumbent upon him to rule as to the legality of defendant’s arrest; it was mandatory that he determine whether there was probable cause for his arrest. If the arrest were illegal, then the evidence secured through the search and seizure would likewise be illegal. * * *
 

 «* *
 
 *
 

 “We conclude that the strict rules of evidence with respect to evidence of former arrests as set forth supra in LSA-R.S. IS :495 do not apply to trials of the motion to suppress. The arresting officer testifying on the motion to suppress is in a different position than a witness testifying on trial. • He testifies as to
 
 *695
 
 police conduct; lie has to explain certain mental deliberations as well as knowledge within his professional ambit. He has to offer proof as to whether a contested arrest was legal. He has to offer proof as to whether an incidental search and seizure following arrest was legal or not. He is in a tenuous position. He has to prove probable or reasonable justifiable cause for his actions. * * * ” State v. Washington, 252 La. 359, 211 So.2d 290, 293, 294, 295 (1968).
 

 Herein, Sgt. Ezernack testified as to the message he radioed to all police officers whose radioes were tuned to his transmission. The police officers who received the transmission verified his testimony; they related the message received and described their actions following the transmission. A fleeing suspect was pursued by police officers; there had to be reasons for pursuit and for the pursuit of a particular person — here, the defendant. It is only logical that the police officers had to testify to such facts in order to establish probable cause for arrest. Sgt. Ezernack did not arrest the defendant; the testimony of Officer Johnson and Detective Oestricher was therefore offered for the purpose of showing probable cause for defendant’s arrest by Detective Oestricher without a warrant of arrest. We conclude that the testimony of Officer Johnson and Detective Oestricher was not inadmissible hearsay under the instant facts and circumstances revealed by the testimony attached to the instant bills of exceptions.
 

 Bills of Exceptions Nos. 1 and 2 are without merit.
 

 After the above testimony was ruled admissible in evidence at the hearing of the Motion to Suppress, it was probably reiterated to the jury. No bills of exceptions were reserved to its admissibility during trial. Counsel for the defendant in this Court are not the same counsel who represented defendant during trial. Present counsel contend, “The trial judge not only committed error in allowing the hearsay testimony to be introduced, but he further aggravated the situation by failing to instruct the jury, or cautioning them, that the testimony was being introduced solely for the purpose of showing why the police officers were in that area.” They further submit, “that the analysis that the Supreme Court must make of this question is whether there is reason to believe that the statements had a probable prejudicial effect on the trier of facts, and not analyze the hearsay testimony admitted solely by the mode of offering those statements. If the contents of the statements be such that the truth of the matter stated is more likely to take effect upon the trier of fact’s mind than is the fact that it was made with a resulting high risk of undue prejudice, then, regardless of how offered, it must be treated as being used for the truth of the statement and be deemed prejudicial hearsay.”
 

 
 *697
 
 During trial, City Police Detective Heath, who photographed the State’s exhibits, testified as follows:
 

 “Q. What transmission did you hear?
 

 “A. We heard that there was a burglary, I heard that there was a burglary in progress at the Timberland Saw Company at 1196 Rapides Avenue.
 

 “Q. He was transmitting this ?
 

 “A. Sgt. Ezernack was.
 

 “Q. And who was present with you?
 

 “A. Detective Oestricher'.
 

 “Q. Did he give any other details other than there was a burglary in progress?
 

 “A. At
 
 that time we went for our units, you see, and the rest that we heard was while we were in our units.
 

 “Q. When you went to your unit where were you going, sir ?
 

 “A. We were going to assist him.
 

 “Q. Did you hear any further transmission from Sgt. Ezernack while you were going to assist ?
 

 “A. Yes, we heard a transmission that whoever it was was in the process of getting away from the scene.
 

 “Q. What exactly was said, do you re.call ?
 

 “A.
 
 He said that there was David McQueen was inside the Timberland Saw Company and that he was carrying what seemed to be a box, outside, and putting it in a car.”
 

 No bills of exceptions were reserved to the above testimony, and the trial judge was not asked by defense counsel to instruct the jury as to the purpose for which the testimony was adduced.
 

 We are precluded from passing on counsel’s contentions because our consideration is limited to the correctness vel non of the trial judge’s ruling with respect to the testimony of Officer Johnson and Detective Oestricher on the hearing of the Motion to Suppress. Lacking bills of exceptions reserved during trial, we cannot determine whether an independnt instruction by the trial judge to the jury was required when the officers’ testimony was heard by the jury during trial.
 

 BILL OF EXCEPTIONS NO. 3
 

 Bill of Exceptions No. 3 was reserved at the conclusion of the hearing of the Motion to Suppress when the trial judge overruled defense counsel’s objection to the admission in evidence on trial of the case of two boxes of evidence containing lawn mowers removed from the 1956 Oldsmobile driven by defendant.
 

 Defense counsel argue that the search and the seizure of the boxes were improper without a search warrant, and that the Motion to Suppress should have been granted. • They argue: “Thus, it can be clearly
 
 *699
 
 seen that the two boxes which were removed from McQueen’s automobile were not seized constitutionally. In order for McQueen’s car to have been properly searched without a warrant, he would have had to be arrested while
 
 inside
 
 his automobile. The arresting officers are limited in the area in which they can search to the person of the arrestee for a weapon or something that could have been used as evidence against him, or the area from which the person arrested might obtain weapons or evidentiary items.”
 

 Initially, we must make a determination as to whether defendant’s arrest was legal.
 

 As stated supra, Sgt. Ezernack was present at the scene of the accident and had previously informed the police officers present with him of the burglary he had witnessed. Defendant was in great pain after the accident; he was apprehended and .placed in police custody. As stated supra, Detective Oestricher rode in an ambulance with the defendant.to the hospital and formally arrested him after arrival there. Although the instant offense had not been committed in his presence, we conclude that Detective Oestricher had probable cause to arrest the defendant because of the knowledge he possessed concerning the defendant and the events he witnessed. The arrest was legal, and a warrant of arrest was unnecessary. LSA-C.Cr.P. Art. 213; State v. Pebworth, 251 La. 1063, 208 So.2d 530; State ' v. Ryan, 255 La. 398, 231 So.2d 365; McCray v. State of Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 262; Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726. The time of formal arrest was after arrival at the hospital; an informal arrest took place at the time of apprehension. “This article [LSA-C.Cr.P. Art. 218] requires that a peace officer making an arrest shall inform the arrested person of his intention, his authority and the cause of the arrest, but the requirement by the very language of the article does not apply if the accused is being pursued or flees immediately after the commission of a crime.” State v. Martin, 255 La. 961, 233 So.2d 898, 900 (1970).
 

 The facts attached to the instant bill of exceptions and stated supra disclose that the boxes were in plain view of the officers present at the scene of the accident; they were never concealed nor hidden from view. Sgt. Ezernack, as stated supra, saw the defendant place boxes in the car driven by defendant. The evidence was in the automobile when McQueen was being pursued and ran the car into a telephone pole. All that Sgt. Ezernack and Officer Mayeaux had to do to seize the boxes from the Oldsmobile was to remove them from the car, which they did at the instruction of . Detective Oestricher.
 

 We conclude that no search was made of the car driven by defendant, and that the rule of Harris v. United States, ' 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067
 
 *701
 
 (1968), that “it has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence,” is applicable to the instant seizure. However, if we were to admit for the sake of argument that a search and seizure of the automobile driven by defendant took place, we find that such a search and seizure were legal because they followed what might be termed an informal legal arrest under exceptional circumstances (where the accused was aided after being injured) which was later legally formalized. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; State v. Roach, 256 La. 408, 236 So.2d 782; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.
 

 Bill of Exceptions No. 3 is without merit.
 

 BILL OF EXCEPTIONS NO. 4
 

 Bill of Exceptions No. 4 was reserved when the trial judge overruled defense counsel’s objection to the introduction in evidence of the State’s Exhibits Nos. 1 and 2, two boxes containing the lawn mowers which were taken from the rear seat of the 1956 Oldsmobile driven by defendant.
 

 Defense counsel argue that the prosecution failed to lay the proper foundation for the introduction of the evidence which was allegedly illegally seized. They further argue, that the prosecution did not adequately show the steps the arresting officers took in securing the evidence and then producing it at trial free from any tampering or possible manipulation. It is still further argued that the State did not show that proper authentication of the evidence had been made when it was taken into custody.
 

 We find no merit in this bill. The evidence, as stated supra, was taken to the police station by Sgt. Ezernack and Officer Mayeaux. Detective Oestricher, who ordered the removal of the boxes from the Oldsmobile, turned them over to Detective Captain C. L. Michiels, custodian of evidence for the Police Department, in whose possession they were kept until trial, being properly initialed and guarded. The boxes were identified at trial and were therefore relevant evidence.
 

 “ * * * Connexity is a matter for the jury to decide, so long as the objects introduced are shown to have some relevance which the trial judge considers sufficient to warrant their introduction into evidence. State v. Stokes, 250 La. 277, 195 So.2d 267 (1967).” State v. Wright, 254 La. 521, 225 So.2d 201, 206 (1969).
 

 Bill of Exceptions No. 4 is without merit.
 

 BILLS OF EXCEPTIONS NOS. 5 and 6
 

 Bill of Exceptions No. 5 was .reserved when the trial judge overruled.de-.
 
 *703
 
 fense counsel’s objection to an identity-made by Detective Heath of a particular object shown in a picture of two boxes, State Exhibit No. 4.
 

 Bill of Exceptions No. 6 was reserved when the trial judge overruled defense counsel’s objection to Detective Heath’s answering the question, “What is that a picture of?” The picture was of a stretcher, State Exhibit No. 3.
 

 It is argued by defense counsel that the pictures were the best evidence of their contents, and that the trial judge erred in allowing the police officer to give his impression of things he observed in photographs.
 

 There is no merit in the above bills. The testimony of Detective Heath, the photographer, was offered for the purpose of explaining what was shown in the pictures. The pictures were thereafter introduced in evidence and observed by the jury, the members of which were in a position to determine what they disclosed.
 

 Bills of Exceptions Nos. 5 and 6 are without merit.
 

 BILL OF EXCEPTIONS NO. 7
 

 Bill of Exceptions No. 7 was reserved when the trial judge denied defense counsel’s motion that the jury be allowed to view the location at’ which one of the State’s witnesses contended he was parked at the time the instant crime was committed.
 

 Herein, counsel for the defendant contend:
 

 “Although Code of Criminal Procedure Article 762 gives the trial judge the discretion of whether to allow the jury to view the scene of the crime, his refusal to allow the jury to view the scene in this case was prejudicial error in that the jury could have seen for themselves that it would have been almost impossible for Sgt. Ezernack to look into the building at night and identify the defendant David McQueen. The defendant had no other way of proving that the police officer could not have adequately seen inside of the building from where he was parked outside in a car to identify McQueen as the person in the building. Therefore, to deny this request to view the scene by the jury was prejudicial error.
 

 “It is obvious from reading the per curiam that he was of the opinion that the ‘game was in the bag’ for the State. This, however, was an erroneous conclusion and certainly invaded the province of the jury. It was up to the jury to decide if David McQueen was guilty, not the trial judge. Furthermore, if the jury had been given a chance to view the scene of the alleged burglary, this may have made a significant effect on Sgt. Ezernack’s testimony.
 

 “The reason the jury would have doubted Sgt. Ezernack’s testimony on
 
 *705
 
 seeing McQueen at the scene of the alleged burglary was the difficult angle of sight from the place Ezernack parked to the Timberland Saw Company office. Such a doubt in the mind of even one juror would have been sufficient to obtain a verdict for the defendant.” LSA-C.Cr.P. Art. 762 provides:
 

 “Sessions of court shall be held at the parish courthouse but may be held at places within the parish other than the courthouse in the discretion of the court:
 

 “
 
 *
 
 t-
 
 *
 

 “(2) To allow the jury or judge to view the place where the crime or any material part thereof is alleged to have occurred, or to view an object which is . admissible in evidence but which is difficult to produce in court. At this view, the court shall not permit the taking of evidence except in connection with the place or object; or
 

 « *
 
 2fc *
 
 J}
 

 The above article clearly provides that the viewing by the jury of the scene of the crime or a place where any material part of it is alleged to have occurred is discretionary with the trial judge. Herein, we do not find that the trial judge abused his discretion. In the following per curiam he explains his reasons for denying defense counsel’s motion:
 

 “
 
 * * *
 

 “Actually I feel that I did the defendant a favor in denying the request. Considering the hour of the day when the request was made, 4:30 P.M., and that it would not be dark for three or more hours later, at which time the jury could view the scene, under the same conditions of darkness so as to observe where Sgt. Ezernack was and the Timberland Saw Company lighted up as it was on the night of the burglary, the jury could .very well have been aggravated by this delay in the trial. Aside from this, however, there were witnesses who testified that it was possible to see inside of the building under its lighted conditions at night. Taking the jury out to the scene as requested by the defendant would have accomplished nothing, in my view, except as stated before, to .aggravate the jury against the defendant. Certainly no prejudice resulted from the denial of this request, which under C.Cr.P. Art. 762 was within the discretion of the Court to grant or deny. Furthermore, basically the request was made by defense counsel with the purpose in mind of refuting the testimony of Sgt. Ezernack who stated that he saw the accused go in and out of the building. Other evidence in the case amply supports and corroborates Sgt. Ezernack’s testimony. There is no denial of the fact that the accused left the scene-of the crime in a ‘cloud of dust’ and was immediately pursued by at least two
 
 *707
 
 patrol cars, that the accused travelling at a high rate of speed failed to stop for 8 stop signs and his flight was aborted when he hit the utility pole. If Sgt. Ezernack had not seen what he testified to, there would not have been any chase of and flight to escape by the accused.” See, State v. O’Day, 188 La. 169, 175 So. 838.
 

 Bill of Exceptions No. 7 is without merit.
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 [1]
 

 . “Error No. 1. The trial court erred by allowing into evidence hearsay statements made by police officers, which resulted in denying the defendant due process of law guaranteed by the Constitution of the United States.
 

 “Bills of Exceptions Numbers 1 and 2.
 

 “Error No. 2. The trial court erred in ' not suppressing evidence which was seized as a result of an illegal search.
 

 “Bill of Exceptions Number 3.
 

 “Error No. 3. The trial court made several prejudicial erroneous rulings on points of evidence and in failing to permit the jury to view the scene of the crime.
 

 “Bills of Exceptions Numbers 4, 5, 6 and 7.’"