315 So.2d 667 (1975)
STATE of Louisiana
v.
Eric NINE.
No. 55882.
Supreme Court of Louisiana.
June 23, 1975.
Rehearing Denied July 25, 1975.
*669 Robert Glass, J. Philip Stein, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Eric Nine and four others were charged and convicted by the trial judge of possession of a controlled dangerous substance, marijuana, in violation of R.S. 40:966. The other defendants have failed to appeal their convictions and only that of Eric Nine is before us. On February 27, 1973 the defendant was sentenced to pay a fine of $500 or to serve fifty-five days in parish prison and to serve four months in parish prison, and costs.
I. Jurisdiction
At the time of sentencing, defendant filed a motion for an appeal; an order of appeal was not signed by the trial court. Subsequently, the trial court amended (on its own motion) the sentence on March 25, 1974, by reducing the fine from $500 to $300; all other provisions of the sentence were unaffected. The defendant again filed two motions for appeal, one to the Supreme Court, the other to the appellate division of the Criminal District Court for the Parish of Orleans. The trial court denied the motion for appeal to the Supreme Court and granted the order of appeal to the appellate division. On October 21, 1974 the appellate division #1 of the Criminal District Court dismissed the appeal, finding that the trial judge had reduced the fine solely for the purpose of depriving this court of jurisdiction; the appeal was then transferred to this court pursuant to the appellate division's order.
Initially, the State contends that this court is without jurisdiction to hear this appeal under Art. VII, § 10(7), La.Const. (1921), since the sentence was reduced to $300, and appellate jurisdiction of this case therefore is vested in the appellate division of the Criminal District Court under Art. VII, § 83, La.Const. (1921). While the trial court had the authority under C.Cr.P. 881, 913(B) and 916 to modify the sentence prior to and after the ordering of the appeal, the trial court could not affect the jurisdiction of this court.
C.Cr.P. 915 instructs the trial court that it shall order an appeal when a motion for an appeal has been properly made. The language of C.Cr.P. 544 of 1928, the predecessor to C.Cr.P. 915, read as follows:
"There is no appeal until there is an order of appeal, but no person who has made his motion within the legal delay can be deprived of his right to such order by any fault or omission on the part of the trial judge."
Article 915 broadened this language to provide that: "When a motion for an appeal has been timely filed, the appeal shall not be affected by any fault or omission on the part of the trial court." Therefore, while the trial court retains authority to modify or correct a sentence after the order of appeal is signed under art. 916(3), its failure to sign an order of appeal to which defendant is entitled to have *670 signed immediately, cannot affect the defendant's appeal. At the time of the defendant's first motion for appeal, the sentence imposed was in excess of a fine of $300 and jurisdiction over the case was vested in this court. The trial court's failure to sign the order of appeal could not affect defendant's appeal by divesting this court of jurisdiction over it.
To the extent that State v. Washington, 252 La. 359, 211 So.2d 290 (1968), is contrary to this opinion, it is overruled.
The opinion of the appellate division of the Criminal District Court is correct. The appeal is properly before this court.
II. The Motion to Suppress
The defendant by a motion to suppress attempted to prevent the introduction of marijuana which was found both outside and inside the house. The trial court denied the motion, holding that the marijuana inside the house and outside the house had been legally seized.
At the hearing on the motion to suppress Detective Charles Farrell of the juvenile division of the New Orleans police department testified:
"About 7:45 PM on the night of the third of January we had received a complaint from Mr. Montalbano concerning two of his nieces who had run away from home. He gave us the address of 3919 Ulloa Street, a house he had taken the girls out of and kept overnight prior. He requested that we go with him to this residence to check and see if those girls were there again."
Lieutenant Charles Rodriquez, also of the juvenile division, testified that their purpose in going to the house was to "inquire about two juvenile girls we had no knowledge of any other violations and it has been procedure to inquire if a person is there, a run-away, and if the person says no we have no legal right to enter unless we have a search or arrest warrant."
Upon arriving at the house the police were in the company of Mr. Montalbano and a Mr. Butler. When the latter two persons approached the front door, Lieutenant Rodriquez remained back off the porch on the right side of the steps. While standing at this position he observed a side door, approximately forty feet to the rear on the right side of the house, open and close quickly. Lieutenant Rodriquez mentioned the opening of the door to Detective Farrell, who with Mr. Montalbano went down the side yard on the left side of the house. About fifteen to twenty feet from the front of the house three parcels of green leafy substance fell around Detective Farrell, one hitting him on the shoulder. He recognized the material in the clear bags as being marijuana and returned to the front, by which time Lieutenant Rodriquez had entered the premises. Eric Nine, who had opened the door, was arrested immediately upon Detective Farrell's return; then the officers with defendant Nine went to the dining room where the other defendants were arrested.
The house was checked to see if other persons were present, but there was not a search for weapons until the officers called from the narcotics division arrived twenty to twenty-five minutes later. Upon their arrival the area in the immediate vicinity of the dining room table and the entire house was searched and other bags of marijuana were found within four to six feet of the defendants. Detective Farrell testified that all the marijuana was found within "about two feet, `arm's length'" from the immediate area of the defendants. Some, apparently, was found in a sack of garbage either under the table or very near it.
Defendant contends that the seizure of the three bags of marijuana by Detective Farrell while in the side yard was the product of an illegal search in violation of the Fourth Amendment. As his presence in the side yard was not by virtue of a search warrant, we must determine *671 whether the officer's presence may be justified under one of the limited exceptions to the requirements of a search warrant. It is defendant's contention that the officer was illegally present in an area within the "curtilage" and therefore the "plain view" doctrine cannot be applied to this situation. The legality of the officer's presence cannot be determined on the basis of the definition of "curtilage," a concept of common law property, and its application to this situation.[1] Instead, we must view the actions of the officer under the particular circumstances and determine whether his presence violated the defendant's privacy. It is defendant's right to privacy, not a specific place, which is protected by the Fourth Amendment. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).[2]
In United States v. Fisch, 474 F.2d 1071, cert. den. 412 U.S. 921, 93 S.Ct. 2742, 37 L.Ed.2d 148 (1973), the Ninth Circuit upheld the admissibility of conversations overheard by government agents in an adjoining motel room without the use of electronic equipment, and stated this standard:
"The test applied as to society's tolerance of the search rests, as it has for years, upon `the facts and circumstancesthe total atmosphere of the case.' There is no ready formula, `each case is to be decided upon its own facts and circumstances.' What we undertake, actually, is a balancing process, a weighing of the social factors involved. Or, as Judge Duniway put it in the pre-Katz case of Smayda v. United States, 352 F.2d 251 (9th Cir. 1965), cert. denied 382 U.S. 981, 86 S.Ct. 555, 15 L.Ed.2d 471 (1966), `The public interest in its privacy, we think, must, to that extent, be subordinated to the public interest in law enforcement.'" 474 F.2d 1071, at 1077-78.
The question is whether, under the circumstances, the intrusion of Detective Farrell into the side yard was an intrusion into an area in which the defendant had a justified expectation of privacy.[3] There is not any question that the marijuana was within plain view of Detective Farrell as was the issue in State v. Meichel, 290 So.2d 878 (La. 1974).
The police officers understood that they were looking for runaway juvenile girls at the request of a relative. The girls had been found at the residence on a previous occasion. When they went to inquire at the front door, a side door toward the rear of the house opened and closed quickly and movement in the house was heard. It was reasonable for them to conclude *672 that the persons for whom they were searching might be leaving by a rear door. The only way to ascertain the possibility was to investigate the rear by the quickest route available, in this instance, by the left side yard. There was not any unreasonable intrusion into the area where the defendant had a reasonable expectation of privacy which society would consider reasonable under these circumstances; the side yard, while enclosed, was used as a passageway. It was not an area where the defendant had a reasonable expectation of privacy. See Cohen v. Superior Court, 5 Cal.App.3d 429, 85 Cal.Rptr. 354 (1970).
The next issue confronting this court raises a difficult problem of search and seizure law, the nature and scope of the right to search incident to a lawful arrest.
In Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court reviewed its admittedly inconsistent decisions on the search incident to a lawful arrest. The court then discussed the background and purpose of the Fourth Amendment, noting that in McDonald v. United States, 335 U.S. 451, 455, 69 S.Ct. 191, 193, 93 L.Ed. 153, the court had held:
"We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. * * * And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative."
The court stated the rationale for allowing a search incident to a lawful arrest as an exception to the search warrant requirement:
" . . . When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area `within his immediate control'construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." 395 U.S. 752, at 762, 763, 89 S.Ct. 2034, at 2041.
In the case of Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970), the court reiterated that for a valid search to be made without a warrant as an incident to a lawful arrest, it must be made in such a manner that it is "substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." In that case, this court was overruled when it upheld a search of the defendant's house after he was arrested on the front step of the house. The State's contention that the officers had the right *673 to search the house because they were looking for drugs which are easily removed, hidden or destroyed was specifically rejected as a grounds for upholding a warrantless search. The court stated what we believe to be the controlling rules concerning warrantless searches:
" . . . our past decisions make clear that only in `a few specifically established and well-delineated' situations, Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576, may a warrantless search of a dwelling withstand constitutional scrutiny, even though the authorities have probable cause to conduct it. The burden rests on the State to show the existence of such an exceptional situation. . . . And the record before us discloses none.
"There is no suggestion that anyone consented to the search. . . . The officers were not responding to an emergency.. . . They were not in hot pursuit of a fleeing felon. . . . The goods ultimately seized were not in the process of destruction. . . . Nor were they about to be removed from the jurisdiction. . . ." (Citations omitted). 399 U.S. 30, at 34, 35, 90 S.Ct. 1969, at 1972.
This same analysis was later applied to searches of areas outside of a dwelling. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (this case presents an excellent review and study of the exceptions to the warrant requirement of the Fourth Amendment). Also in Coolidge the court noted that the police could not, under the search incident to a lawful arrest exception, search a suspected area at their leisure (in this case the area was an automobile), but rather the search had to be at the site of the arrest and contemporaneous with the arrest.
In the present case the officers arrested the defendant who is now before this court shortly after he opened the door to the house and Detective Farrell informed Lieutenant Rodriquez of the marijuana which had been thrown out of the window. It was some twenty-twenty-five minutes later before the search which uncovered the other quantities of marijuana introduced at trial was instituted. The defendant had been removed to a place other than the one where he was originally arrested.
The decision of whether or not a search incident to a lawful arrest is substantially contemporaneous with the arrest in time and in location cannot and should not be based on technical rules of distance and elapsed time. There is no magical time period after which the search is not "substantially contemporaneous." A review of the cases on this issue shows that the courts have not established strict rules but rather have decided each case on its own facts. See cases collected in 19 A.L.R.3d 727.
Rather than examining the delay of the search from the standpoint of elapsed time, the courts should and do look at the entire situation to determine whether the search was supported by the reasons underlying the exception to the warrant requirement. Our determination of the validity of the search is based on the transcribed record. which in this case is not abundant in detail. A fair construction of that record leaves no doubt that the arrest of defendant and his companions was a legal arrest. All were present within the house when bags of marijuana were thrown from an upper room into the yard. Movement of the occupants about the house was heard. A side door had opened and slammed shut after an officer had announced his presence at the front door. It was not unreasonable to conclude that all five persons present in the house were "concerned with the commission." (R.S. 14:24) of possessing contraband.
The arrest was legal. The evidence seized was in the immediate vicinity of those arrested. Did the delay then of *674 twenty-twenty-five minutes invalidate the search?
When the officers entered they had not abandoned the original object of the visit. They questioned those arrested about the whereabouts of the two missing juveniles. They looked through the house to determine whether any other persons were present. They were juvenile officers, and, although they recognized marijuana, acted with good sense in calling for expert help from the narcotics division.
The situation cannot be described as exigent. Nevertheless, we cannot find the twenty-twenty-five minute delay between the arrest and the search as unreasonable. There is something to be said, even, for searching the premises in the presence of those arrested. The circumstances of this case do not warrant a finding that this warrantless search incident to a lawful arrest amounted to a substantial violation of a constitutional right under the United States Constitution, nor a violation of the right to privacy under Art. I, § 5, La.Const. (1974).
III. Motion for a Directed Verdict
After the State rested, defendant moved for a directed verdict, which was denied by the trial judge. The argument on the motion for directed verdict reiterated defendant's position on the motion to suppress and emphasized the absence of more specific information connecting defendant with the marijuana thrown out of the house.
Since the ruling on the admissibility of the evidence was correct, the testimony of the police and the contraband seized under the circumstances described was sufficient evidence to support a conviction. Defendant points to the per curiam of the trial judge, where he said there was "evidence sufficient to warrant a suspicion of defendant's guilt . . ." Of course this is an incorrect standard, but we consider the use of the word "suspicion" to be an inadvertence. There is no indication in the transcript that the judge utilized "suspicion" in ruling on the motion for a directed verdict, and our examination of the record shows the legal standard of sufficiency was satisfied by the State's evidence.
There is no merit to this assignment.[4]
For these reasons, the conviction and sentence are affirmed.
BARHAM, J., dissents with written reasons.
CALOGERO, J., dissents for the reasons assigned by BARHAM, J.
BARHAM, Justice (dissenting).
Two police officers were invited to help a man locate two of his nieces. Nowhere in our record is it reflected that these nieces were juveniles. Nowhere in our record is it even indicated that the officers had any reason to believe they were investigating any criminal activity. An officer, like another individual, for good reason which does not involve harassment, certainly may knock upon the entrance door to a house and make the necessary inquiry in connection with his reason for the visit.
*675 However, in the case before us, the police officer who seized the abandoned evidence on defendant's premises was not at the entrance way to defendant's house. The officer was beyond the front of the house and down in the side yard where there was no entrance and where he had no reason to be. This was an enclosed yard, although I really am not too concerned with the question of enclosure.
For an officer to encroach upon the private property of an individual he must be there by invitation (express or implied) or he must be there for good cause in the pursuit of his official duties. While investigating crime based upon probable cause, he may come upon the premises. While giving chase of a criminal, he may come upon the premises. But I do not expect to look into my side yard or back yard and observe the presence of a police officer who merely wants to intrude upon my private premises and who is not acting within the constitutional limits which govern his professional conduct.
Already this Court has fashioned numerous exceptions to the United States and the Louisiana constitutional guarantees against unreasonable searches and seizures which I believe not to have legal foundation. This is another erosion of that constitutional right.
I take particular point with the majority's finding that an enclosed side yard was not an "area where the defendant had a reasonable expectation of privacy." I certainly expect my enclosed premises to afford me privacy except under pressing circumstances far removed from the facts of this case. I would hope that the premises of all Americans could be so protected. I am of the belief that the great majority of Americans do believe privacy extends to their enclosed premises including their private yards and gardens. I have never had occasion to even doubt this proposition.
I respectfully dissent.
NOTES
[1] The jurisprudence dealing with the doctrine of "open fields," Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); Air Pollution Variance Board of Colo. v. Western Alfalfa Corp., 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974), and "curtilage" is extensive and conflicting. In similar situations, a side yard has been found to be a "constitutionally protected area." Wattenburg v. United States, 388 F.2d 853 (9th Cir. 1968); Dennis v. State, 40 Ala.App. 182, 111 So.2d 21 (1959); State v. Buchanan, 432 S.W.2d 342 (Mo.1968); State v. Stanton, 7 Or.App. 286, 490 P.2d 1274 (1971); the contrary position has been taken in United States v. Sorce, 325 F.2d 84 (7th Cir. 1963); Morton v. United States, 155 F.2d 503 (5th Cir. 1953); People v. Bradley, 70 Cal.Rptr. 339 (1968); People v. Alexander, 253 Cal.App.2d 691, 61 Cal.Rptr. 814 (1967) (extensive discussion of California jurisprudence in area justifying search without warrant of barbeque pit in back yard). See, generally, Fisher, Search and Seizure, §§ 16 and 26 (1970).
[2] Justice Harlan, concurring, stated the test in determining whether the State's intrusion was unreasonable to be as follows:

"My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as `reasonable.'" 389 U.S. 347, at 361, 88 S.Ct. 507, at 516.
[3] See Note, "From Private Places to Personal Privacy: A Post-Katz Study of Fourth Amendment Protection," 43 N.Y.U.L.Rev. 968 (1968); Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 375 (1974).
[4] The arguments contained in defendant's perfected Bills of Exceptions Nos. 5 and 6 are related to the arguments on the motion for a directed verdict: the motion for severance came too late, and was without merit; the requested instruction was not wholly pertinent, since evidence sufficient to support a finding of guilt was already before the court; the per curiam indicates the trial judge considered no defense evidence in finding defendant guilty.