318 So.2d 27 (1975)
STATE of Louisiana
v.
Joseph BATISTE.
No. 56087.
Supreme Court of Louisiana.
September 5, 1975.
Rehearing Denied September 30, 1975.
*30 Philip Schoen Brooks, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., G. Thomas Porteous, Asst. Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Division, Parish of Jefferson, for plaintiff-appellee.
MARCUS, Justice.
Joseph Batiste was indicted by the grand jury for the Parish of Jefferson for the murder of Johnnie Baxter on February 24, 1971, in violation of La.R.S. 14:30.[1] After trial by jury, defendant was found guilty as charged and was subsequently sentenced to death.[2] Defendant appeals his conviction and sentence to this court. Twelve bills of exceptions are presented for our review.

FACTS
On February 23, 1971, Mardi Gras day, Johnnie Baxter and his date, Laverne Brewer, met Joseph Batiste around 5:30 or 6:00 p.m. in the French Quarter. Baxter introduced Batiste to Miss Brewer as "Butch." She was told by Baxter that they had served together in the Merchant Marines. Batiste was described by Miss Brewer as having an "afro," sideburns, goatee and mustache. These parties, together with others, left in Batiste's car and went to the Red Barn Lounge. Ultimately, Batiste, Baxter and Miss Brewer and an unnamed companion of Batiste left in Batiste's car. While on the 1-10 service road off Clearview in Jefferson Parish, Batiste stopped the car, got out and opened the hood. Baxter alighted to see the cause of the trouble. Miss Brewer then saw Batiste, with a gun in his hand, shoot Baxter twice. Following the shooting, Miss Brewer got out of the car and was then grabbed by Batiste and his companion. They forcibly tried to drag her back into the car; however, she was able to break away and attract the attention of five or six male juveniles in the area. They hid in the bushes alongside the road. The Batiste vehicle circled the area once and then departed. Baxter died of the bullet wounds at the scene of the crime. Immediately after Baxter's burial (about three days after the killing), Miss Brewer identified Batiste from a series of photographs shown to her by a detective. Batiste was later arrested. According to Miss Brewer, she was in the company of Batiste on the day of the shooting from 5:30 p.m. until about midnight, at which time Batiste fatally shot Baxter. In June of 1971, Miss Brewer viewed a physical lineup and picked out two individuals as the possible perpetrators of the crime; however, she was unable to make a positive identification of Batiste. According to her testimony, she was unable to identify Batiste at the physical lineup because his hair seemed shorter and she did not see his goatee, mustache or sideburns. About a month prior to trial, Miss Brewer was again shown a series of photographs by the state attorney. Miss Brewer immediately identified Batiste. However, this identification was suppressed by the court. At trial, Miss Brewer positively identified Batiste as the assailant based upon her observation of him during the seven-hour period he was in her company on Mardi Gras day.

BILL OF EXCEPTIONS NO. 1
This bill was reserved to the rulings of the trial court concerning the sufficiency of the particulars furnished by the state in *31 response to defendant's motion for a bill of particulars.
First, to the question asked: "Was there any other show-up other than the line-up held on Tuesday, June 15, 1971?" the state answered: "No." The complaint here is that the answer was ruled responsive despite the fact that Miss Brewer had been shown certain photographs on dates other than June 15, 1971. The complaint is without merit. The question is somewhat confusing, but seems to refer only to physical lineups. The response by the state was technically correct. If defendant desired information as to photographic display or identification, he should have been more specific in his request. Hence, the ruling of the trial judge was not error.
Next, defendant sought the names of the individuals who appeared before the grand jury which indicted him. This is a request for pre-trial discovery which is unavailable to the defense. State v. Burkhalter, 260 La. 27, 255 So.2d 62 (1971). Thus, the trial judge correctly refused to require the state to furnish this information.
The last ruling concerns the approval by the trial court of the refusal by the state to answer the question propounded in the supplemental application for particulars: "Has the ownership of the alleged gun in this case been determined?" At the outset, it should be noted that the inquiry does not request the state to produce or permit defendant to inspect the gun. Rather, it simply requests information as to its ownership. The gun was not introduced in evidence at trial. The only evidence concerning the gun was the testimony of Miss Brewer that a gun was used by defendant when he fatally shot Baxter. There was no evidence that the victim ever possessed a gun or that Batiste acted in self-defense. Accordingly, ownership of the gun was not at issue, nor could the fact of ownership be considered exculpatory in nature. State v. Thomas, 306 So.2d 696 (La.1975); State v. Hillman, 298 So.2d 746 (La.1974). Hence, the trial judge properly denied defendant's request for this information. In sum, this bill lacks merit.

BILL OF EXCEPTIONS NO. 2
Defendant excepted to the trial court's sustaining the state's challenge for cause when a prospective juror answered that he could not, no matter what the evidence, return a verdict of death.[3] It is claimed that the ruling is contrary to the holding in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
Our jurisprudence has interpreted Witherspoon as not prohibiting the state from excluding for cause a prospective juror who indicates that, in the case to be tried, he could under no circumstances return a verdict of guilty with capital punishment. State v. Brown, 302 So.2d 290 (La.1974); State v. Hayes, 271 So.2d 525 (La.1973); State v. Cripps, 259 La. 403, 250 So.2d 382 (1971). Clearly, we have no Witherspoon violation here. Hence, this bill is without substance.
However, it should be noted that this case was tried in April of 1972. In June of 1972, the United States Supreme Court decided Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, declaring the death penalty unconstitutional as then imposed and administered under statutes similar to Louisiana enactments on the same subject. Hence, the imposition of the death penalty upon defendant in the instant *32 case is in violation of the Furman decision. Accordingly, it is necessary that we annul and set aside the sentence imposing the death penalty and remand the case to the trial court for imposition of a life sentence. State v. Franklin, 263 La. 344, 268 So.2d 249 (1972).

BILLS OF EXCEPTIONS NOS. 3, 4 AND 5
Bills of Exceptions Nos. 3 and 4 were taken to the rulings of the trial court allowing, over defense objections, the removal by a state witness of the contents of a box containing evidence taken at the scene of the crime and a reading of a list of these items by this witness. Defendant argues that this was done solely for the purpose of inflaming and arousing the emotions of the jurors. Bill of Exceptions No. 5 was reserved to the ruling allowing the introduction into evidence of some of these articles. The objection here is directed to the alleged insufficiency of the chain of custody.
The witness in question was the evidence clerk. The foundation was laid by having the clerk identify the objects as the same ones which the police had deposited with him. In the process, the contents of the box were removed and identification was made by the witness. This procedure was perfectly proper in order to establish the identification of each object. Nothing was done to inflame or arouse the emotions of the jurors. Hence, there is no merit to Bills of Exceptions Nos. 3 and 4.
Likewise, we find no substance to the complaint that the chain of custody was not sufficiently established to permit the introduction into evidence of a live cartridge, two spent casings and a pair of moccasins (S-7, S-8, S-9 and S-11). These items were recovered from the scene of the crime by Technician Engman and turned over to Officer Ripp who released the live cartridge and two spent casings to Officer Vega of the New Orleans Crime Lab and the moccasins to Officer Olsen. Officer Vega performed a ballistics examination of the items delivered to him and thereafter released them to Officer Olsen. Officer Olsen then turned over all the articles to the evidence clerk who maintained possession of them until he produced them for introduction into evidence at trial.
All witnesses clearly identified the objects except Officer Ripp. He remembered receiving the articles from Technician Engman and releasing the live cartridge and two spend casings to Officer Vega and the moccasins to Officer Olsen. While making a positive identification of the moccasins, he was unable to say with absolute certainty that the live cartridge and two spent casings were the same ones he had handled, as he had failed to personally mark them.
In regard to the evidence necessary to establish a chain of custody, we stated in State v. Gladden, 260 La. 735, 257 So.2d 388 (1972) that:
The chain of custody or connexity of the evidence is a matter for the jury to decide, so long as the objects introduced are shown to be reasonably connected with the defendant or the crime and have some relevancy which the trial judge considers sufficient to warrant their introduction into evidence. State v. McQueen, 257 La. 684, 243 So.2d 798 (1971); State v. Pesson, 256 La. 201, 235 So.2d 568 (1970); State v. Coleman, 254 La. 264, 223 So.2d 402 (1969).
In State v. Dotson, 260 La. 471, 256 So.2d 594 (1971), we held:
To admit demonstrative evidence at a trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it is offered in evidence.

*33 The law does not require that the evidence as to custody eliminate all possibility that the object has been altered. For admission, it suffices if the custodial evidence establishes that it is more probable than not that the object is the one connected with the case. A preponderance of the evidence is sufficient. State v. Coleman, 254 La. 264, 223 So.2d 402; State v. Martin, 250 La. 705, 198 So.2d 897; State v. Bertrand, 247 La. 232, 170 So.2d 386.
The lack of positive identification goes to the weight of the evidence, rather than to its admissibility. Ultimately, connexity of physical evidence is a factual matter for determination by the jury. State v. Wright, 254 La. 521, 225 So.2d 201; State v. Whitfield, 253 La. 679, 219 So.2d 493; State v. Progue, 243 La. 337, 144 So.2d 352; 2 Wharton's Criminal Evidence (12th ed.), § 673, p. 617.
See also State v. Freeman, 306 So.2d 703 (La.1975) and State v. Flood, 301 So.2d 637 (La.1974).
The lack of positive identification by one witness of the live cartridge and two spent casings goes to the weight of the evidence rather than to its admissibility. From a totality of the evidence, we find that it is more probable than not that the objects objected to were the ones taken from the scene of the crime. The chain of custody was sufficiently established to permit introduction into evidence of the items. Hence, there is no merit to Bill of Exceptions No. 5.

BILL OF EXCEPTIONS NO. 6
The objection in this bill was made when Laverne Brewer, relating what occurred after the shooting, made the statement that she told others "they killed Johnny, they killed Johnny." Defendant urges that this is hearsay, not within the res gestae, and was elicited from the witness solely to inflame the jurors.
According to the record, this eyewitness was asked what happened immediately after the shooting; did she break away and what did she do. She answered:
I had to run to the corner and there were some guys at the corner and I started screaming to them, just tellingI said, theythey were asking me, what's the matter, you know, and II said, `they killed Johnny, they killed Johnny.'
The trial court ruled that the answer was properly allowed as part of the res gestae. Res gestae doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before and after the commission of the crime but also includes testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances. La.R.S. 15:447 and 448. State v. Morgan, 296 So.2d 286 (La.1974); State v. Edwards, 287 So.2d 518 (La.1973); State v. Curry, 263 La. 997, 270 So.2d 484 (1972); State v. Sercovich, 246 La. 503, 165 So.2d 301 (1964).
The witness to the crime, Laverne Brewer, was relating what she said immediately after the shooting to the young boys who rescued her. We agree with the trial judge that this statement was properly admitted as part of the res gestae.

BILL OF EXCEPTIONS NO. 7
Defendant claims in this bill that the in-court identification of defendant by Laverne Brewer was "tainted" by the photographic identification of defendant by this witness one month prior to trial. It is argued that this is evidenced by the fact that Miss Brewer was unable to make a positive identification of defendant in the prior June lineup.
Defendant succeeded in having this photographic identification of defendant suppressed *34 prior to trial.[4] However, the ruling placed a limitation on the defense that, if he in any way referred to this photographic identification in his cross-examination of Miss Brewer, the state would then be allowed to pursue the fact that the witness positively identified the defendant when shown the photographs. Defendant complains that the limitation and restriction placed on him in the trial judge's ruling effectively precluded him from showing that Miss Brewer's in-court identification was "tainted" by the illegal photographic identification. We do not agree.
First, the photographic identification was suppressed at defendant's request. In accordance therewith, the state was prohibited from offering any evidence with reference thereto. On the other hand, defendant was not restricted from going into the matter at trial if he so desired. However, if defendant saw fit to do so, the ruling reserved the right of the state to examine the witness on the issue. This reservation to the state in the order is nothing more than the law allows. La.R.S. 15:281 affords a party the right of redirect examination on subject matters gone into on cross-examination. Hence, the reservation of the right of the state to examine the witness concerning the photographic identification in the event defendant went into the matter on cross-examination was in conformity with La.R.S. 15:281. The restriction placed in the ruling did not deny defendant any of his constitutional rights. Rather, it accorded the state the right it had under law.
Under the facts of this case, particularly the length of time and the circumstances under which the witness and defendant were in the company of each other on the day of the crime, it is clear that the in-court identification had a source independent of any out-of-court identifications. State v. Selman, 300 So.2d 467 (La.1974); State v. Moseley, 284 So.2d 749 (La.1973); State v. Newman, 283 So.2d 756 (La.1973). The fact that the witness, Laverne Brewer, did not identify defendant at the June lineup is explained in her testimony, i.e., that when she observed defendant at the time of the crime, as well as in the photographic display conducted immediately thereafter, he had an "afro," sideburns, goatee and mustache; however, in the lineup, she was unable to identify Batiste because his hair seemed shorter and she did not see his sideburns, goatee or mustache. In any event, her lack of identification at the June lineup is a matter which addresses itself to the weight of her testimony rather than its admissibility. State v. Pierre, 284 So.2d 886 (La.1973). Hence, this bill is without merit.

BILL OF EXCEPTIONS NO. 8
This bill was reserved to the sustaining by the trial court of the state's objection to defense questioning of the state witness, Laverne Brewer, as being repetitious. Defense counsel was seeking to impeach this witness regarding her reason for not being able to identify defendant at the lineup. Miss Brewer was repeatedly questioned (three times) as to whether she saw a goatee on defendant during the pre-trial lineup. Each time she answered in the negative. La.R.S. 15:275 provides "[i]n the discipline of his court, the trial judge is vested with a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross, and even though no objection be urged by counsel." Finding no abuse of discretion here, we will not disturb the ruling of the trial judge. Hence, the bill is without merit.

*35 BILL OF EXCEPTIONS NO. 9
This bill was taken to the ruling of the trial court's sustaining a state objection to a question asked by defense counsel on recross-examination. The question concerned the friendship between the victim and the defendant.[5] The objection was sustained for the reason that it was not covered on redirect examination. Defendant contends that this question was highly relevant to the probability of defendant committing the murder.
La.R.S. 15:281 provides:
The redirect examination must be confined to the subject matter of the crossexamination and to the explanation of statements elicited on cross-examination; but the application of this rule is within the discretion of the trial judge, provided that the opportunity be not denied to recross on the new matter brought out on the redirect.
The witness, Laverne Brewer, had been extensively cross-examined by defense counsel regarding her in-court identification. On redirect, the state asked a few limited questions involving her identification of defendant. The subject of friendship between the victim and defendant was not covered on redirect examination. Thus, the question asked by defense counsel was outside the scope of recross-examination. Also, in our view, no prejudice resulted in the curtailment of this recross-examination. Hence, we find no abuse of the discretion vested in the trial judge by La.R.S. 15:281. State v. Corbin, 285 So.2d 234 (La.1973).

BILL OF EXCEPTIONS NO. 10
The barroom operator of the Ebony Lounge, James West, testified that the victim, Miss Brewer and defendant were seen by him in this bar on the night of the crime. He recognized defendant because he had been in his bar before that night. The witness was extensively examined in reference to the presence of these parties in the bar that night. During the examination, he was asked whether he had seen defendant leave with the victim and Miss Brewer, to which he answered: "No, I didn't see them leave." West was then asked if he recalled seeing defendant in the bar after the victim left, and he answered: "I wouldn't notice it, no, but I couldn't recall." The next question propounded to him was: "Could it be a possibility he was still there?" The state objected on the ground that this called for an opinion on the part of the witness. The objection was sustained, and this bill was reserved. Thereafter, the witness reiterated that he did not see any of them leave.
The objected-to question clearly called for speculation on the part of West. Except as otherwise provided in the Code of Criminal Procedure, a witness can testify only as to facts within his knowledge; he may not testify as to any recital of facts heard by him, nor as to any impression or opinion that he may have. La.R.S. 15:463 (1966); State v. Kirklin, 283 So.2d 713 (La.1973). Hence, the ruling of the trial judge was correct, and this bill lacks merit.

BILL OF EXCEPTIONS NO. 11
When the trial judge denied a motion for a mistrial because of a prejudicial remark made by the prosecutor, this bill was reserved.
Following the testimony of one of the defense witnesses, the prosecutor made the remark, "she lied." It was determined by the trial judge that the remark was not in fact heard by the jury. The remark was not loud enough to be recorded by the court *36 reporter and is not contained in the trial transcript. The judge stated that he did not hear this remark and co-counsel (Achee) stated that, although he heard it, he did not think the jury heard the remark.
In any event, the prosecutor's remark, "she lied" is not one of the listed types of remarks or comments which furnish a ground for a mistrial under article 770 of the Louisiana Code of Criminal Procedure. The listed types of remarks or comments under this article generally cannot be cured by an admonition to the jury unless requested by defendant. On the other hand, article 771 deals with comments or remarks made by, inter alia, the district attorney during trial, such as here, which are irrelevant or immaterial and are of such a nature that it might create prejudice against the defendant in the mind of the jury and are not within the scope of article 770. Generally, such remarks or comments may be cured by an admonition to the jury to disregard same. The comment in the present instance falls within this latter category. Although it was found by the trial judge that the jury did not hear the remark, upon request of defense counsel, the judge nevertheless admonished the jury. Hence, we find no prejudice resulted, and this bill is without merit.

BILL OF EXCEPTIONS NO. 12
This final bill was reserved to the trial court's denial of defendant's motion for a new trial. It is first urged that the verdict is contrary to the law and the evidence. Such an assertion presents nothing for our review. State v. Lisenby, 306 So.2d 692 (La.1975); State v. Gilbert, 286 So.2d 345 (La.1973).
Secondly, defendant re-urges the alleged Witherspoon violation (Bill of Exceptions No. 2) and the claim that the in-court identification by Miss Brewer was influenced by the prior illegal photographic identification (Bill of Exceptions No. 7). These alleged errors were disposed of previously under the respective bills of exceptions. As therein stated, we found no error. Hence, further consideration is unnecessary.
Finally, defendant for the first time in this motion for a new trial asserts error in regard to allegedly prejudicial remarks made by the district attorney in the course of his closing argument. The record does not reveal that any objection was made at the time of the occurrence of the alleged irregularity. Objections to remarks of the district attorney in closing argument must be made at that time and not after conviction in a motion for a new trial. La.Code Crim.P. art. 841 (1966);[6]State v. Neal, 231 La. 1048, 93 So.2d 554 (1957). Likewise, the alleged irregularity is not discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. La.Code Crim.P. art. 920(2) (1966).[7]See State v. Refuge, 300 So.2d 489 (La.1974). Hence, this bill is without merit.

DECREE
For the reasons assigned, the conviction of the defendant is affirmed, but the death sentence imposed is annulled and set aside, and the case is remanded to the Twenty-Fourth Judicial District Court for the Parish of Jefferson with instructions to the trial judge to sentence the defendant to life imprisonment.
BARHAM, J., dissents particularly from the disposition of Bills of Exceptions 2, 7 and 8.
NOTES
[1] La.R.S. 14:30 was amended in 1973. La. Acts 1973, No. 109, § 1. However, this prosecution was based upon the statute prior to its amendment.
[2] The state concedes that the death sentence imposed on April 24, 1972 should be annulled and set aside pursuant to Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) and the case remanded to the trial court with instructions to the trial judge to sentence defendant to life imprisonment. State v. Franklin, 263 La. 344, 268 So.2d 249 (1972).
[3] The exact question propounded was: "Are you so predisposed that no matter what the evidence was, that you could not come back with a . . . verdict of death? In other words, no matter what the evidence would come from the witness stand you would not be able to . . . listen to the evidence and then, after properly evaluating it . . . could you come back with the death penalty?" The answer was: "No, sir."
[4] The basis for the suppression was the absence of counsel at the time of the display of these photographs. Later in United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), the United States Supreme Court ruled "... that the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender."
[5] The exact question asked was: "Just one question more. Is there anything in your mind toStrike that. Johnny was very friendly with this fellow, Butch; is that correct?"
[6] Article 841 was amended by Acts 1974, No. 297, § 1. The amended article likewise provides that irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. However, the requirement of an objection shall not apply to the court's ruling on any written motion.
[7] Amended by Acts 1974, No. 207, § 1; no significant change was made in this provision of the article.