341 So.2d 861 (1977)
STATE of Louisiana
v.
Mathew JOSEPH and Bruce Fluker.
No. 58211.
Supreme Court of Louisiana.
January 24, 1977.
*862 Lawrence Blake Jones, New Orleans, Loyola Law School Clinic, John M. Standridge, *863 Student Practitioners, William J. O'Hara, III, Supervising Atty., for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Mathew Joseph, Bruce Fluker and Samuel Kelly were indicted by the grand jury of Orleans Parish for distribution of heroin. La.Rev.Stat. 40:966. Joseph and Fluker were jointly tried, but Kelly was severed, having waived his right to trial by jury. After trial by jury, Joseph was found guilty as charged and sentenced to life imprisonment. Fluker was found guilty of attempted possession with intent to distribute and was sentenced to imprisonment for twenty years. They prosecute a joint appeal to this Court.
Shortly after noon on June 17, 1975 Officers Reiher, Taplin, Titus and Ben of the New Orleans Police Department were engaged in an undercover narcotics operation at the corner of Jackson Avenue and South Prieur Street in the city of New Orleans. They were joined by special agent Driscoll of the Federal Narcotics Bureau. The operation was part of a larger joint effort of State and Federal authorities code-named "Topcat", aimed at gathering information relating to narcotic offenders and subverting illicit drug traffic. In accordance with prearranged plans whereby undercover Officer Taplin was to make a narcotic purchase about 12:30 that afternoon, a site for surveillance from a van with a camera was chosen approximately 150 feet from the corner of Jackson Avenue and South Prieur Street. Another observation point was selected a like distance from the locale of the planned rendezvous.
At approximately 12:26 p.m. Officer Reiher observed Joseph, Fluker and Kelly nearby in front of a church on Jackson Avenue. Kelly left the group and walked toward the Club DeVille across South Prieur Street. He had what appeared to be a cigar box under his arm. Joseph and Fluker followed. At this time undercover officer Taplin arrived in his car and drove into the parking lot on the side of the Club DeVille. As Taplin came to a stop, Kelly approached the car, followed by Joseph and Fluker. An exchange of heroin was made between Kelly and Taplin at 12:46 p.m. Three months later, on September 19, 1975, Joseph and Fluker were arrested and charged with distribution of heroin.

I
Joseph and Fluker contend that the trial judge made improper, prejudicial comments concerning a state witness in the presence of the jury. Officer Ben had testified for the State and was being cross-examined by defense counsel in an effort to determine where Ben was when he photographed the narcotic transaction on June 17, 1975. Ben had been asked to designate his position on a sketch of the area drawn by Officer Reiher. Ben requested, instead, that he be permitted to make his own sketch for the purpose, to which defense counsel agreed, commenting in response to the trial judge's query, "[D]o you think that would help?":
"Well, sir, he could tell you this but I'm a little confused about where he was, and I see him shooting pictures through a fence in one location, and if he's parked I don't see how he shoots through a fence one time and doesn't another time. That'sI'm just trying to ask him where he was.";
whereupon, the Judge remarked, "If you want to take on this man as a witness under cross-examination you get Mohammed Ali and Foreman together and they got a better shot." Defense counsel objected to the judge's "comment on the quality of this witness." The trial judge then admonished the jury:
"Members of the jury, disregard my observations about this officer, and you make your own observations about him. And, later on, when I charge the jury I will tell you what the law is and how to test or evaluate the veracity of a witness and the quality of a witness, so you make *864 that decision when that time comes. But, disabuse your mind from anything that I said about this witness."
Ostensibly satisfied with this admonition, defense counsel proceeded with the crossexamination of Officer Ben. After a somewhat lengthy cross-examination the State, without objection by the defense, offered into evidence the narcotics involved and the photographs of the crime. When a recess was called, however, defense counsel moved, out of the presence of the jury, for a mistrial based upon the judge's remarks. He then asserted that the previous admonition of the judge was not sufficient.
Initially the State contends that the motion for mistrial came too late because Article 841 of the Code of Criminal Procedure requires "that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take." Since no defense motion for a mistrial was made contemporaneously with the judge's remarks, only an objection to the judge's comment on the quality of the witness, and because the judge promptly admonished the jury to disregard his remarks, the State's contention on this issue appears to be meritorious.
However, we prefer to base this decision upon the merits of the motion for a mistrial. The remarks of the judge do not fall within that class of prohibited remarks or comments which mandate a mistrial as contemplated by Article 770 of the Code of Criminal Procedure.[1] And, since defense counsel did not request that only an admonition be given, the judge's remark is, instead, the kind which is contemplated by Article 771.[2] In view of the fact that the judge did admonish the jury to disregard his irrelevant remark as directed by Article 771, the issue is whether his refusal to grant a mistrial is an abuse of discretion.
Considering the permissive authority this article confers, and because of the ambiguous character of the remarks and the prompt admonition, the effect upon the jury, if any, was most probably confusion, not prejudice. No abuse of discretion is shown warranting the drastic remedy of mistrial. La.Code Crim.Pro. art. 775; State v. Nicholas, 312 So.2d 856 (La.1975).
This assignment has no merit.

II
Several trial rulings on admissibility of evidence are said to be erroneous, and each *865 is relied upon as a basis for reversing the convictions.

a
On direct examination by the State, Officer Reiher was asked to relate his particular responsibility at the time of the offense in June 1975. In response he explained in general terms the operation called "Topcat". He explained that the objective of the operation was to gather information concerning illicit drug traffic in New Orleans. Finally, he said, the narcotic operation was funded by a Federal grant.
It is the defense contention that this account of the operation was not "relevant to the material issue" as required by Section 435 of Title 15 of the Revised Statutes.
Further, the defense contends that leading questions were employed by the State in this part of the examination:
"Q. What type of surveillance would this be?
A. This would be . . . I don't know what you would call it.
Q. Whetherwhether it was stationary or mobile?
A. This would be stationary."
To this, defense counsel objected that the questioning was irrelevant, and leading contrary to Section 277 of Title 15 of the Revised Statutes. The Section provides:
"A leading question is one which suggests to the witness the answer he is to deliver, and though framed in the alternative, is inadmissible when propounded to one's own witness, unless such witness be unwilling or hostile."
Insofar as the relevancy issue is concerned, because the surveillance of the defendants was part of operation "Topcat", the testimony was relevant to explain the facts surrounding the commission of the offense. Further, because defense counsel had made repeated reference to operation "Topcat" during voir dire examination of the prospective jurors, the State was entitled to explain and develop an area of inquiry which the defense had introduced. La.Rev.Stat. 15:441.
The Court is of the opinion that the alleged leading questions could more plausibly be regarded as the interrogator's effort to elicit an explanation from the witness of the type of surveillance involved in this offense. The question propounded submitted a choice to the witness and did not improperly suggest the answer. While conceding that response to the alleged leading questions caused only minimal harm, the defense asserts that this error, combined with others, demonstrates that the trial was replete with prejudicial errors. Considered alone, or in combination with the rulings complained of hereafter, there is no merit to the contention that the ruling on the leading questions was prejudicial error.
In overruling the objection, the trial judge did not abuse the discretion the law vests in his office. State v. Sneed, 328 So.2d 126, 134 (La.1976); State v. Washington, 294 So.2d 794 (La.1974); State v. Fallon, 290 So.2d 273, 291 (La.1974).

b
Officer Reiher testified that he had conducted a field test for heroin and that the test "gave a reaction to the presence of heroin." The defense contends that it was error to permit this opinion testimony because Officer Reiher had not been qualified as an expert.
The field test involved a simple chemical color examination which Officer Reiher had performed before on numerous occasions. He testified that such a test, though not conclusive, did indicate heroin in this instance. The State simply introduced this evidence to show why the police maintained special custody of the substance purchased by Officer Taplin from the accused, and as a part of the predicate establishing the chain of custody.
In order to prove that the powder in question was in fact heroin, the State relied on the testimony of Walter Strata, Jr., a criminalist employed by the New Orleans Police Department Crime Laboratory, to whose expert qualifications in the classification and identification of heroin defense counsel stipulated.
*866 Considering Officer Reiher's extensive experience in the area, and the limited purpose for which his testimony was used, there was no error in permitting him to express his opinion on the field test. "On questions involving a knowledge obtained only by means of special training or experience the opinions of persons having such special knowledge are admissible as expert testimony." La.Rev.Stat. 15:464. See also La.Rev.Stat. 15:466. In addition, the subsequent testimony of a witnessconceded by the defense to be an expertclassified the substance as heroin, thus rendering Officer Reiher's testimony harmless. La.Code Crim.Pro. art. 921.

c
Samuel Kelly was one of the participants in the June 1975 narcotic transaction upon which this prosecution is based. He was not tried with these defendants, but was severed because he waived a jury trial and elected to be tried by the judge.
Kelly was called as a defense witness, although the jury had already learned of his role in the narcotics transaction through the testimony of several state witnesses, officers who participated in the surveillance. After being sworn, when questioned by defense counsel, Kelly refused to answer on the grounds that the answers might incriminate him. He was asked who his attorney was, whether his refusal to answer was upon advice of counsel or a personal decision and whether he could identify Officer Taplin as the person to whom he sold heroin on June 17, 1975. Except for identifying his attorney, he refused to answer any of these questions.
On cross-examination, Kelly was asked by the State's attorney if he had been charged with Fluker and Joseph and brought into court with them in connection with proceedings involving charges for distribution of heroin. He refused to answer these questions, again claiming the privilege against self-incrimination. The same was true of a final question on cross-examination in which the State's attorney asked whether he had waived trial by jury.
In argument the defense claims that the cross-examination was improper and was in reality an effort on the part of the State to impart to the jury the fact that Kelly had been arrested with Fluker and Joseph and charged with the same offense. This contention has no merit, as the facts outlined above indicate. This was not an action initiated by the State to have the witness claim the privilege against self-incrimination as defendants contend, relying upon the proposition expressed in State v. Berry, 324 So.2d 822 (La.1975), to the effect that it is improper to knowingly call a witness who will claim a privilege for the sole purpose of impressing the jury with the fact that the witness claims the privilege. In the instant case the defense called Kelly and, being aware that he had been charged, should have foreseen that he would claim the privilege. Cross-examination by the State was within proper bounds and tended to explain why Kelly was not being prosecuted with these defendants.

d
Sergeant Paul Titus testified for the State, outlining the procedure followed in developing and preserving the film used to photograph the narcotics transaction in his case. On cross-examination he testified that the transaction at the corner of Jackson and Prieur Streets involved two or three minutes of the fifty minutes length of exposed film on the two rolls he had in court at the time. He was then asked if other shots had been taken with these two rolls of film and if those pictures were exhibited to the jury. When he answered that they were not, he was asked to explain to the jury why they were not. He answered, "It involved other defendant [sic], possibly this same defendant, in a different case. It was not involving this date, the 17th of June or any transactions or anything which occurred that date."
Defense counsel moved for a mistrial, arguing that this statement was a reference to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible, as set *867 forth in Article 770 of the Code of Criminal Procedure. See footnote 1, supra. This article is not applicable because the statement was not made by the judge, district attorney or a court official. Nor was the defense entitled to have the judge admonish the jury that this statement could not be considered by them because no request to admonish the jury was made as Article 771 requires.
Moreover, the witness Titus was responding to defense counsel's probing questions, attempting thereby to explain his answer as requested by defense counsel. In these circumstances, the State cannot be held responsible for statements which may be harmful to the defense when they are made in response to questions propounded by defense counsel.

e
In closing argument defense counsel, after explaining the difference between direct and circumstantial evidence, sought to further illustrate the difference by a hypothesis. At this point the State's attorney objected that neither the proposed illustration nor the definition of circumstantial evidence properly falls within the scope of closing argument.
Generally a wide latitude is allowed counsel in closing argument, and any undue restriction which limits argument to the prejudice of the defense is error. Where the prejudice is substantial reversal is warranted. Cf. State v. George, 312 So.2d 860 (La.1975).
Since defense counsel did have the opportunity to define and explain the difference between direct and circumstantial evidence, denying him the right to illustrate the meaning of circumstantial evidence by a hypothesis did not constitute such a restriction which unduly prejudiced the defense. This conclusion takes into consideration the fact that the defense has not set forth the bearing which circumstantial evidence would have upon the facts of this case. This disparity is emphasized by a review of the State's evidence which, on all salient points, is direct and often positive.
Argument must be confined to evidence admitted, to the lack of evidence, to conclusions of fact to be drawn therefrom, and to the law applicable to the case. La. Code Crim.Pro. art. 774.

f
Officer Taplin was questioned by the State about the conversation he had with Kelly at ten o'clock on the morning of June 17, 1975. In this conversation at the Club DeVille on the corner of Jackson Avenue and South Prieur Street the parties agreed to the price and quantity of the heroin buy which was to take place between twelve and one o'clock that afternoon.
Objection was made by the defense that what Kelly told Taplin was hearsay, and the objection was overruled upon the State's assertion that Kelly's statements were an exception to the hearsay rule for they were part of the res gestae.
Because these preliminary negotiations between Taplin, Kelly and defendants were integral parts of the entire transaction culminating in the actual sale and delivery of the heroin approximately two hours later, Kelly's utterances at that time fall within the res gestae rule as "necessary incidents of the criminal act." La.Rev.Stat. 15:448. It is fundamental that what occurs at the time and place of the commission of the crime is admissible in evidence as res gestae. State v. Henry, 309 So.2d 132 (La. 1975); State v. Batiste, 318 So.2d 27 (La. 1975); State v. Williams, 263 La. 755, 269 So.2d 232 (1972).
For the reasons assigned, the convictions and sentences are affirmed.
NOTES
[1] La.Code Crim.Pro. art. 770:

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial."
[2] La.Code Crim.Pro. art. 771:

"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."