356 So.2d 1380 (1978)
STATE of Louisiana
v.
Randy MILLET.
No. 60635.
Supreme Court of Louisiana.
March 6, 1978.
*1381 Stephen J. Hornyak, Gretna, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Div., Roy F. Blondeau, Jr., Asst. Dist. Attys., for plaintiff-appellee.
CALOGERO, Justice.
Defendant Randy Millet was charged with distributing heroin to one Henry Dufforc. He was tried by jury, found guilty as charged, and sentenced to life imprisonment. On appeal he relies upon eight assignments of error. Finding merit in his first assignment, we pretermit consideration of his other contentions.
The evidence at trial revealed that Officers Higgenbothem and Machauer of the Jefferson Parish Sheriff's Narcotics Division received a telephone call on September 27, 1975 from an unnamed confidential informant. Although the policemen did not testify as to what they were told by the informant because the trial judge maintained defendant's challenge to the admission of hearsay testimony, as a result of the phone call Officer Higgenbothem set up a surveillance at 517 Debbie Drive in Westwego and Officer Machauer met the informant and one Henry Dufforc at that address. Then Officer Machauer and Dufforc drove to another Westwego address where Dufforc got out and met for a few moments with Randy Millet. It was during this meeting between Dufforc and Millet that the single sale of heroin on which this prosecution is based allegedly took place. Officer Higgenbothem, who was trailing in his vehicle, could not say that he saw a sale or transaction; he saw nothing change hands.[1] The other officer, Michael Machauer, testified that he observed Dufforc hand Millet what seemed to be money, and Millet handed him an object which "appeared to be shiny." Dufforc put the object in his left hand pocket. The officer said he could not tell what the shiny object was and could not state that Millet sold drugs to Dufforc. Dufforc and Millet entered the agent's car and they drove to another address where Millet got out. After the agent and Dufforc drove back to Dufforc's residence, Dufforc took five pieces of aluminum foil out of his left-hand pocket. Keeping one of the packets, Dufforc gave four packets to the agent; these proved to contain heroin. Several months later, both Dufforc and Millet were arrested for distribution of heroin.
In assignment of error number one, defendant alleges that the court committed reversible error in permitting certain hearsay testimony into evidence, over defense *1382 objection. Officer Machauer was permitted to recite that when he met Dufforc at 517 Debbie Drive Dufforc told him that they would have to see defendant Randy Millet in order to purchase the heroin.
The challenged testimony of state's witness Officer Michael Machauer is as follows:
"Q When you set out with Henry Dufforc, what was the purpose of your meeting Randy Millet?
A From what I understand from Henry Dufforc, it was, they were to score Heroin.
Q Did he tell you he would score Heroin from Randy Millet?
MR. HORNYAK:
Objection, hearsay.
MR. BARROW:
It's part of the res gestae.
MR. HORNYAK:
Not if it's not a continuous matter involving the defendant it's not part of the res gestae.
THE COURT:
Let me check something. Court feels from the testimony that was heard that this question involved a continuous transaction over a short period of time. The question asked involved part of the res gestae, therefore, the objection is overruled.
MR. HORNYAK:
Respectfully reserve a Bill, Your Honor.
THE WITNESS:
What Henry told me when I asked him if he had any of the stuff, referring to Heroin, he said we're going to have to go see Randy." [Emphasis added]
Henry Dufforc was not called to testify, although he was admittedly available since he had begun serving his sentence for participating in this illicit transaction, apparently having pled guilty the day before Millet's trial. Defendant now claims that the admission of the officer's testimony that Dufforc had told him that "we're going to have to go see Randy [defendant Randy Millet]" to purchase heroin constituted hearsay and was wrongly admitted into evidence at his trial.
Hearsay evidence is an out-of-court unsworn statement offered at trial to prove the truth of the matter contained in the statement, and thus resting for its value upon the credibility of the declarant. State v. Martin, 356 So.2d 1370 (La.1978); State v. Bean, 337 So.2d 496 (La. 1976); McCormick, Law of Evidence § 225 at 449 (Hornbook ed. 1954). The contested statement gave significant support to the inference that at the meeting between Dufforc and Millet defendant had indeed committed the crime in question by selling heroin to Dufforc. No direct evidence that a sale took place was admitted at trial since neither officer could testify that he saw money or aluminum foil packets change hands. Thus, only from Henry Dufforc and/or defendant Millet could there have come such direct evidence of a sale. Dufforc was not called and did not testify while Millet, not being compelled to take the stand, likewise did not testify, nor were any confessions or admissions introduced against him. Even the circumstantial case against Millet was a rather weak one because Dufforc was not searched before he was given the drugs. The officers thus stated that they could not be sure that the drugs he gave them were not already on his person when they met him. Thus the statement of Officer Machauer that Henry Dufforc told him that they would "have to go see Randy" to purchase heroin supplied significant evidence at trial that the meeting between Dufforc and Millet was to be for the purpose of Millet's selling heroin to Dufforc. Coupled with this testimony, the otherwise weak proof of a Millet-Dufforc sale took on a much stronger character.
In Dufforc's statement implying that he did not have any heroin, and relating that he and Machauer would have to "go see Randy" there is implicit one or the other of the following assertions:
1) Randy sells heroin and is going to sell us some. I've made the arrangements with him; or,

*1383 2) While I don't have any heroin, I know someone, Randy, who sells heroin and will probably sell us some.
Either implication is fraught with prejudice to defendant and highly probative in its effect upon the construction which the jury is called upon to give the later Millet-Dufforc street encounter.
The Dufforc statement, with one or the other of these necessary implications noted above, was thus offered to prove the truth of the matter contained therein, i. e., either that Dufforc had arranged with Millet to have Millet make a sale or at least that Millet sells heroin currently or has sold heroin in the past and for that reason will probably be willing to do so again.[2] Because Dufforc's unsworn statement was made out of court and was presented by a witness to whom the statement was purportedly made to show the truth of the matter asserted therein, it was hearsay evidence and inadmissible at trial unless otherwise permitted by provisions of the Code of Criminal Procedure. R.S. 15:434.
The state contends, however, that the statement was admissible in evidence as part of the res gestae and, as such, constituted an exception to the prohibition against hearsay.
The res gestae exception is statutorily defined as follows:
"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence." [R.S. 15:447]
* * * * * *
"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." [R.S. 15:448]
The res gestae exception to the hearsay rule allows the admission of testimony concerning utterances made before, during and immediately after a crime because statements made under the pressure and excitement of a crime or other extraordinary occurrence carry a special reliability. State v. Bean, supra; State v. Batiste, 318 So.2d 27 (La.1975); State v. Mays, 315 So.2d 766 (La.1975). Unlike statements made in the course of ordinary conversation when the speaker normally weighs his words as he talks, it is believed that spontaneous and impulsive words which are spoken during the criminal transaction, or as a part of it, are reliable statements, admissible into evidence even without the usual safeguards of admitting only the testimony of those who are sworn to tell the truth and are available for cross examination. II Wharton's Criminal Evidence §§ 297, 301 (13th ed., Torcia ed. 1972); McCormick, Law of Evidence § 274 at 587 (Hornbook ed. 1954).
The state relies for its argument that Dufforc's statement was admissible as res gestae on the case of State v. Joseph, 341 So.2d 861 (La.1977). The three defendants there, Joseph, Fluker and Kelly, were charged with distribution of heroin. Joseph and Fluker were jointly tried, but Kelly's case was severed. At the trial of Joseph and Fluker, undercover officer Larry Taplin *1384 was allowed, over defense objection, to relate words said to him by Kelly. In that conversation, the officer and Kelly agreed to the price and quantity of the heroin buy which was to actually take place between them about two hours later. We concluded that there was no error in the admission of the hearsay statements because we found that these negotiations were "integral parts of the entire transaction culminating in the actual sale and delivery of the heroin approximately two hours later," and, as such, were admissible as res gestae because they were "necessary incidents of the criminal act." 341 So.2d at 867; R.S. 15:448.
We find the Joseph case distinguishable from the case under consideration here. In Joseph the words of an apparent principal in setting up a later sale with an undercover officer were allowed to be related by the officer. Those words were not, as in this case, accusatory, as relates to the purported co-perpetrators, the defendants Joseph and Fluker. While all of the facts regarding Joseph's and Fluker's involvement in the crime are not apparent from the Joseph opinion (defendant Joseph was convicted of distribution of heroin and defendant Fluker attempted possession with intent to distribute heroin, apparently incident to the Kelly-Taplin heroin sale), we can properly assume that Joseph and Fluker were charged as principals in the Kelly-Taplin sale. In any event the purportedly hearsay Kelly statement did not recite as fact matters concerning the conduct of defendants Joseph or Fluker, but, instead, related to the price, quantity and time of the prospective Kelly-Taplin sale of heroin.
The real difficulty with allowing as part of the res gestae Dufforc's statement that Millet sells heroin or that Millet has agreed to sell heroin is that, independent of that statement, there is little or no adequate proof of a criminal act (i. e., the Millet-Dufforc sale). The state's contention is essentially a boot strap operation. Dufforc's hearsay statement that they would have to see Millet to purchase heroin constitutes proof that there has later taken place a crime (the Millet-Dufforc sale of heroin), occurrence of which is a necessary prerequisite to employing the res gestae exception to the hearsay rule.
Were we to allow such legal contrivance it would be possible for a Dufforc attempting to frame a Millet to do so without ever having to testify and be cross-examined concerning the damning assertions that Millet sells heroin or that Millet arranged to sell us heroin.
Had the state been able to show a Dufforc-Millet sale with independent plausible evidence e.g., Dufforc's testimony that he and Millet transferred money and heroin, or Machauer's or Higgenbothem's testimony that he observed a Dufforc-Millet transfer of money and heroin, or other evidence, Machauer's testimony as to Dufforc's statement might well have been permissible because then fitting the res gestae exception to the hearsay rule. Absent such a showing that a crime occurred, we will not in the guise of a res gestae exception to the hearsay rule permit defendant's unsworn, out-of-court statement to influence the jury's determination that Millet sold heroin to Dufforc in a street encounter which neither observing officer could identify as a heroin sale.
The state argues, alternatively, that the declaration was properly admitted because Dufforc and Millet were co-conspirators and that this statement, made in furtherance of the conspiracy, was admissible under R.S. 15:455. That statute provides as follows:
"Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established."
Apparently the state believes that a prima facie case of conspiracy was established between Dufforc and Millet and, that being *1385 so, Millet was as responsible for Dufforc's words as was the speaker. Contrary to the state's position, however, there was no evidence of conspiracy in this case. The testimony that Dufforc and Millet met for a few moments does not constitute prima facie evidence of a conspiracy. And the only other bit of evidence joining them is the statement of Dufforc's here at issue. The state cannot be heard to argue that the very statement at issue itself supplies the prima facie case of conspiracy; the proof of conspiracy must be made by separate admissible evidence. See State v. Brumfield, 329 So.2d 181 (La.1976); State v. Kaufman, 331 So.2d 16 (La.1976).
Although not argued in brief, the state in oral argument raised a third contention in response to this assignment: that the failure of defense counsel to object when a similar statement was made at an earlier point in Officer Machauer's testimony constituted a waiver of objection to this testimony, and caused his later objection to the statement's admission to be ineffective. We find this contention without merit.
It is clear from the record that the officer did, in the midst of a lengthy narrative in which he apologized to the court for speaking softly, say "Henry [Dufforc] stated to me that he didn't have any [heroin] at the time and he would have to go see Randy." The defense counsel did not object on that occasion but, a few moments later, when that testimony was highlighted by the prosecutor and repeated by the witness, counsel did object and, by that objection, informed the judge of the error and allowed him to take curative steps.
That objection with its stated legal basis satisfied the purpose of the contemporary objection requirement, C.Cr.P. art. 841, because it called the error to the judge's attention and gave him the opportunity to refuse admission of the reemphasized hearsay declaration. Had the ruling been proper, it would have facilitated the court's admonishing the jury (ex proprio motu, or on request of defendant) to disregard the previous statement of the witness, however inaudible, to the same effect. In a similar situation in State v. Lee, 346 So.2d 682, 685 (La.1977) we said:
"The only effect we can see in counsel's failure to promptly request relief was that the trial was unnecessarily continued beyond a point when it should have been aborted. We do not find that sufficient reason to bar defendant from making a later motion when the error was blatantly repeated. Therefore we hold that the trial judge erred in refusing to grant defendant a requested mistrial when the prosecution during rebuttal argument stated and stressed that defendant Lee had been convicted of this very murder on an earlier trial of the case."
Moreover, given the importance of the statement as proof that the crime defendant Millet was accused of committing occurred at all, as previously discussed, we cannot say that the judge's erroneous ruling was harmless simply because the statement, now accentuated, was already before the jury. C.Cr.P. art. 921.

Decree
Accordingly, defendant Randy Millet's conviction and sentence are set aside, and the case is remanded for further proceedings not inconsistent with the views expressed herein.
REVERSED AND REMANDED.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., dissent.
NOTES
[1] Officer Higgenbothem was asked: "Did you see a sale of narcotics take place between Randy Millet and anyone?" He answered: "I saw Randy Millet and Henry Dufforc meet. I didn't see any type of transaction or anything. * * * I saw nothing change hands."
[2] The fact that this statement was admitted to prove the truth of the matter contained therein is further supported by the reliance of the state on the statement in opening and in closing arguments as its proof that the street encounter between Dufforc and Millet actually was the occasion for a sale of heroin. In his opening statement the prosecutor said:

"Now Agent Machauer will testify that he purchased the Heroin from an individual other than the defendant. He will also testify that during the original transaction was set up, the transaction was set up on the understanding that the original purchase would be made from the defendant to this other individual and then transferred to Agent Machauer."
In his closing statement, the prosecutor again relied on the Dufforc statement as proof that the crime occurred when he stated: "You heard Agent Machauer testify that Henry Dufforc told him that he did not have any drugs, that he could score the drugs from Randy Millet and that is what in fact he did."